[S. F. No. 11048. In Bank.—March 18, 1924.]

MONTECITO COUNTY WATER DISTRICT (a Public Corporation), Petitioner, v. H. J. DOULTON, etc., Respondent.

[1] WATER DISTRICTS—BONDED INDEBTEDNESS—ACT OF 1913 (STATS. 1913, P. 1049, AS AMENDED IN 1915, 1917 AND 1919) — AMENDMENT OF MAY 11, 1923 — EFFECT UPON PREVIOUS LAW. — The amendment adopted on May 11, 1923, to the County Water District Act (Stats. 1913, p. 1049, as amended in 1915, 1917, and in 1919), changing the previous law by restricting the liability of a bonded indebtedness to particular lands to be benefited thereby and to be described in the resolution authorizing the bond issue and in the notices of election, and by confining the voting on such bond issue to the lands to be benefited, has no such retroactive effect as to render void the further issuance and sale of bonds of a water district duly authorized, voted for and directed to be issued and partly sold prior to the adoption of said amendment and in full conformity with the terms and provisions of said act as it read at the time such bonded indebtedness was authorized by the resolution of the board of directors of said water district and at the time of the holding of the election within said district approving the creation of said bonded indebtedness and the issuance and sale of said bonds in accordance with the terms of said resolution; nor does such amendment alter the method of levying or collecting the taxes for the payment of principal and interest of said bonds.

[2] STATUTORY CONSTRUCTION — RETROACTIVE STATUTES — INTENT. — While the legislature has power to pass retroactive laws which do not impair the obligations of contracts or affect injuriously vested rights, statutes are not to be construed as intended to have

a retroactive effect so as to affect pending proceedings unless such intent is expressly declared or necessarily implied from the language of the enactment.

PROCEEDING in Mandamus to compel president of a certain water district to sign bonds. Writ granted.

The facts are stated in the opinion of the court.

Heaney, Price & Postel and F. M. Angellotti for Petitioner.

O'Melveny, Millikin, Tuller & Macneil, Sayre Macneil and Paul E. Schwab for Respondent.

RICHARDS, J.—This is a petition for a writ of mandate wherein the Montecito County Water District, a public corporation, seeks to compel the respondent, H. J. Doulton, as president of said district, to sign certain bonds of said district which he has thus far refused to do. The facts out of which this proceeding arose, as set forth in said petition and conceded by the respondent to be truly stated thereunder, are briefly as follows: The Montecito County Water District was duly organized and exists under the provisions of an act of the legislature entitled "An act to provide for the incorporation and organization and management of County Water Districts," etc., approved on June 10, 1913 (Stats. 1913, p. 1049), as amended in 1915 (Stats. 1915, p. 26), and in 1917 (Stats. 1917, p. 225), and in 1919 (Stats. 1919, p. 816). The location of said district is in the county of Santa Barbara, state of California. On the twentieth day of January, 1923, the board of directors of the said Montecito County Water District duly passed and adopted a resolution declaring it to be necessary for said district to incur a bonded indebtedness for the purposes and in an amount set forth in said resolution, which also fixed the maximum term the bonds representing such indebtedness were to run before maturity and the maximum rate of interest to be paid thereon, and further fixing the date at which a special election should be held for the purpose of authorizing said bonded indebtedness. The said resolution in all respects conformed to the requirements of the statute as the same stood at the date of the adoption of said resolu-

tion and also at the date fixed for the holding of said election. The said board of directors of said district also adopted on said date and in due form a resolution providing for the giving of notice of such election. Thereafter, and on March 1, 1923, the said special election was duly and regularly held throughout said district, pursuant to the resolution calling the same and providing for the notices thereof, which were duly and regularly given, at which said election the said proposition to incur said bonded indebtedness and issue said bonds was carried, and so declared to be by the said board of directors thereof upon a proper canvass of the votes cast thereat. The amount of said bonds thus authorized to be issued was $850,000, each of said bonds being issued in the sum of $1,000 and bearing interest at four per cent per annum, payable semi-annually. Thereafter and on the twentieth day of July, 1923, the said board of directors of said water district, pursuant to the authority by which they were thus invested, duly and regularly sold at public auction 100 of said bonds to the Pacific Southwest Trust and Savings Bank of Santa Barbara for the full par value thereof, plus interest to the date of issuance, plus a premium of $50, and thereafter duly received said sums as the purchase price thereof and delivered said bonds to the said purchasers; all of said bonds so sold are still outstanding and no part of the principal thereof has as yet been paid thereon.

Thereafter, and on the fourteenth day of February, 1924, the board of directors of said water district duly passed and adopted a resolution providing for the sale by said district of an additional amount of said bonds, amounting in the aggregate of their face value to the sum of $200,000. That thereafter there was presented to the said H. J. Doulton, as president of the board of directors of said water district, the said bonds in the said sum of $200,000 in value for his signature as such official, pursuant to the terms of the resolution providing for the issuance of the same, but the said H. J. Doulton, as such president of said water district, refused and still refuses to sign all or any of the said bonds. That the sole reason assigned and existing for the said failure and refusal of the said H. J. Doulton, as president of said water district, to sign said bonds or any of said issue thereof, is this: That while said bonded indebted-

ness and entire bond issue of said water district was resolved
upon, authorized, valid, and directed to be issued under and
in strict conformity with the said statute of 1913, and the
amendments thereto adopted prior to May 11, 1923, the said
statute of 1913 was further amended by an act of the legis-
lature approved upon said last-named date (Stats. 1923,
p. 312), and while the first issue of $100,000 in their ag-
gregate value of said bonds above referred to were ordered
sold and were in fact sold and issued prior to said date,
the said amendment of said statute so passed and approved
on May 11, 1923, purported to work a change in the lan-
guage and effect of said statute as it read prior to said
amendment in the following respect, viz.: That whereas,
under the terms of section 15 of said statute as it stood
prior to said amendment thereof, it was contemplated that
the lands within the entire district were to be benefited by
the purposes to be subserved through the authorization and
creation of a bonded indebtedness by said water district
and through the issuance and sale of the bonds thus author-
ized to be issued and sold and through the expenditure of
the moneys derived from the issuance and sale of said bonds
for the purposes to be thus subserved, the amendment to
said section of said statute contemplated that only certain
lands within the boundaries of said water district were to
be or might be benefited by the creation of said bonded in-
debtedness and the issuance and sale of said bonds for the
declared purposes to be subserved thereby, and hence said
amendment to said statute required that in the resolution
of the board of directors of a water district providing for
a bonded indebtedness and declaring the purpose for which
said proposed indebtedness was to be incurred, the lands
within the district to be benefited thereby should be stated,
and said amendments to said section 15 of said statute fur-
ther provided that the board of directors of such water
district, in their notice of the election to be held for the
purpose of determining whether such bonded indebtedness
should be created, should include within the boundaries of
the voting precincts within which such election was to be
held only those lands which were to be benefited as stated
and declared in the resolution of said board proposing the
creation of such indebtedness, and that said election should
only be held within such boundaries and that only the quali-

fied electors residing within such boundaries should be entitled to vote at said election. Said amendment adopted on May 11, 1923, further provided, by amendments to section 21 of said statute, that in the event that the revenues of the district should be inadequate to pay the principal or interest of any bonded debt, the board of directors should cause a tax to be levied upon the lands within said district described in the resolution of the said board of directors, declaring the necessity for incurring such bonded indebtedness and that such lands only should be liable for such tax. Said amendment also changed the provisions of section 22 of said statute so as to provide that the lien of such taxes as were so levied for the payment of the principal or interest due upon such bonded indebtedness should be laid only upon the lands within said district which were stated and described in the resolution of the board of directors of said district providing for the creation of such bonded debt. The foregoing changes in the statute of 1913 as it read prior to the enactment of the amendment thereto approved on May 11, 1923, having been made therein after the passage and adoption of the resolution of the board of directors of the Montecito County Water District authorizing the creation of the bonded indebtedness of said water district above referred to and after the election held in said water district determining that such bonded indebtedness should be created in accordance with the terms of said resolution, and after the issuance and sale of the first issue of said bonds in the amount in their aggregate value of $100,000, but before the resolution of said board of directors directing the further issuance and sale of an additional $200,000 in the amount of their aggregate value of said bonds, were held by the said H. J. Doulton, president of said water district, to be operative to the extent of invalidating the attempted issuance and sale of said additional amounts of said bonds as were thus directed to be issued and sold after the adoption of said amendment to said statute, for the reason that said bonds as to the liability which their issuance and sale created was not limited to the particular lands within said district to be benefited by the expenditure of the moneys to be derived therefrom in accordance with the requirements of said amendment to said statute adopted on May 11, 1923.

[1] The precise question thus presented by the application for this writ is as to whether the said amendment to the statute of 1913 is to be given such retroactive effect as to render void the further issuance and sale of the bonds of said water district duly authorized, voted for, and directed to be issued and sold prior to the adoption of said amendment and in full conformity with the terms and provisions of said statute as it read at the time such bonded indebtedness was authorized by the resolution of said board of directors and at the time of the holding of the election within said district approving the creation of said bonded indebtedness and the issuance and sale of said bonds in accordance with the terms of said resolution. We are entirely satisfied that the amendment to the statute of 1913, approved on May 11, 1923, is to be given no such retroactive effect and is not to be held as in any manner vitiating or injuriously affecting the further issuance and sale of the bonds of said water district in accordance with the action of the board of directors of said district and of the electors thereof taken prior to the adoption of said amendment and affecting the entire issue and sale of the bonds thereof, duly authorized prior to the passage of said amendment, nor does it alter the method of levying or collecting the taxes for the payment of principal and interest of said bonds. The reasons which impel us to this conclusion are the following: [2] The said amendment to the statute of 1913, adopted on May 11, 1923, does not purport, either by its express terms or by any reasonable implication, to be retroactive in its operation or effect, and it is a well-established principle of statutory construction that while the legislature has power to pass retroactive laws which do not impair the obligations of contracts or affect injuriously vested rights, it is equally true that statutes are not to be construed as intended to have a retroactive effect so as to affect pending proceedings unless such intent is expressly declared or necessarily implied from the language of the enactment. It was so held by this court in the case of *Vanderbilt* v. *All Persons*, 163 Cal. 507 [126 Pac. 158], and in the very recent case of *East Bay Municipal Utility District* v. *Garrison*, 191 Cal. 680 [218 Pac. 43]. See, also, *State Commission, etc.*, v. *Welch*, 20 Cal. App. 624 [129

Pac. 974]; *Smith* v. *Lyon,* 44 Conn. 75; *Estate of Richmond,* 9 Cal. App. 402; *State ex rel. Ruessvig* v. *McDonald,* 101 Minn. 349 [112 N. W. 278]; *Village of Champlain* v. *Mc-Crea,* 165 N. Y. 264 [59 N. E. 83]; *City of Newport* v. *Newport Nat. Bank,* 146 Ky. 736 [143 S. W. 377]; *Eddy* v. *Morgan,* 216 Ill. 437 [75 N. E. 174]; *Mayne* v. *Board of Commrs.,* 123 Ind. 132 [24 N. E. 80].

Counsel for the respondent chiefly relies upon two decisions of this court to sustain his position that the effect of the amendment to the statute made in 1923 was to render it impossible to legally issue the bonds in question under the terms of the statute as it stood prior to said amendment. The first of these cases is *Fritz* v. *San Francisco,* 132 Cal. 373 [64 Pac. 566], in which this court held that the bond issue which had been voted and duly authorized under the terms of a statute permitting such bonds to be issued, in effect prior to the adoption of the San Francisco charter, which took effect on January 8, 1900, could not be legally issued after the date when said charter went into effect. An examination of that case, however, shows that the conclusion arrived at by this court in that regard was predicated upon the provisions of section 8, article XI, of the constitution, which in its then form provided that upon the ratification by the legislature of such charter of the city it "shall become the organic law thereof and supersede any existing charter and all amendments thereof and all laws inconsistent with such charter." It will thus be seen that the act under which the bond issue in that case was authorized was expressly superseded by the charter and that the intent to render the charter retroactive to that extent was thus made to clearly appear. The amendment to the County Water District Act here in question is not predicated upon any such constitutional provision, but, on the contrary, appears in all its terms and intendments to be prospective, and hence not applicable to the issuance of bonds which had theretofore been fully provided for and duly authorized under the provisions of the valid act. The other case upon which the respondent relies is that of *Wichman* v. *City of Placerville,* 147 Cal. 162 [81 Pac. 537], in which case a bond issue of the city of Placerville had been duly voted for and authorized, while said city was operating

under a charter created by a special act of the legislature in the year 1859. Thereafter and prior to the actual issuance of said bonds the city of Placerville was reincorporated under a new charter by a special act of the legislature adopted in 1863. This court held that the bonds which had theretofore been authorized could not be issued after the adoption of said new charter, for the reason that the reincorporated city was a new and different corporation from that in existence under said former charter, and hence that said bond issue could not become effective as against the new municipal corporation. The differentiation between that case and the case at bar would seem to be obvious. We do not deem it necessary to review in detail the cases from other jurisdictions cited by respondent, since those cases are based upon the provisions of the special statutes of those states under which they arose, nor do we deem it necessary to deal with the other questions presented and argued by the respective parties to this proceeding, for the reason that their discussion is rendered unnecessary by the views already expressed herein.

Let the writ issue as prayed for.

Wilbur, C. J., Myers, J., Lawlor, J., Waste, J., Lennon, J., and Seawell, J., concurred.

Rehearing denied.