[S. F. No. 11199. In Bank.—December 1, 1924.]

PALO VERDE IRRIGATION DISTRICT (a Public Corporation), Petitioner, v. A. E. WARMINGTON, as President of the Board of Trustees of the PALO VERDE IRRIGATION DISTRICT et al., Respondents.

[1] PALO VERDE IRRIGATION DISTRICT ACT—VALIDITY OF—BONDS ISSUED BY PALO VERDE DRAINAGE DISTRICT—PROPER OFFICERS TO EXECUTE.—The Palo Verde Irrigation District Act, under which the Palo Verde Irrigation District was organized, having been declared to be constitutional and the organization of the Palo Verde Irrigation District having been held to be regular and valid, the president and secretary of the board of trustees of that district are the proper officers to sign their names and to affix the seal of that district to unissued bonds of the Palo

Verde Drainage District, and no authority now exists in the officers of the drainage district to do so.

[2] ID.—EXECUTION OF BONDS—GENERAL RULE.—It is the general rule that bonds are to be executed by persons who are in office at the time they sign the bonds.

[3] ID.—POWER TO SELL—AUTHORITY TO CONSUMMATE SALE.—Where power to sell is conferred upon an officer of a corporation or upon an attorney in fact, it carries with it the p .ver to execute all necessary instruments to the consummation of the sale.

[4] ID.—SECTION 22 OF PALO VERDE IRRIGATION DISTRICT ACT—CONSTRUCTION.—Section 22 of the Palo Verde Irrigation District Act, which confers upon the irrigation district the power to sell the bonds of the Palo Verde Drainage District and provides how the funds from the sale shall be used, is intended solely as a protection to the substantial rights of the bondholders and does not necessarily mean that the bonds must be signed by the officers of the old drainage district.

[5] ID.—RECITAL IN BONDS—ESTOPPEL.—The principles of estoppel by reason of recitals in the bonds of the Palo Verde Drainage District apply as effectually for the benefit of *bona fide* purchasers of the bonds signed by officers of the Palo Verde Irrigation District, as they will apply for the benefit of *bona fide* purchasers of bonds already sold by the drainage district and signed by the officers of the drainage district.

[6] ID.—SALE OF BONDS—PRICE.—Bonds which were voted and authorized by the Palo Verde Drainage District prior to the organization of the Palo Verde Irrigation District may be sold for less than par and above ninety cents on the dollar.

[7] ID.—SECTION 23 OF THE PALO VERDE IRRIGATION DISTRICT ACT—CONSTRUCTION.—The provision of section 23 of the Palo Verde Irrigation District Act that if the board of trustees of the district deems it desirable that said board shall be authorized to sell bonds for less than the par value thereof, the board may call a special election to submit to the qualified voters of the district such proposition, does not forbid the sale of the bonds of the Palo Verde Drainage District for less than par unless authorized by special election, but such provision deals only with the bonds issued by the irrigation district itself.

(1)   40 Cyc., p. 822.   (2) 28 Cyc., p. 1599.   (3) 28 Cyc., p. 1596. (4) 40 Cyc., p. 822.   (5) 40 Cyc., p. 822.   (6) 40 Cyc., p. 822.   (7) 40 Cyc., p. 822.

2.   See 19 R. C. L. 1022.
3.   See 21 R. C. L. 881.
6.   See 19 R. C. L. 1023.

APPLICATION for a Writ of Mandate to compel respondent, as president of the board of trustees of Palo Verde Irrigation District, to execute certain bonds of Palo Verde Drainage District. Writ granted.

The facts are stated in the opinion of the court.

L. M. Chapman and Ward Chapman for Petitioner.

O'Melveny, Milliken, Tuller & McNeil and Paul E. Schwab for Respondents.

LENNON, J.—This is an application for a peremptory writ of mandate to compel A. E. Warmington, as president of the board of trustees of the Palo Verde Irrigation District, and Herman Bahls, as president of the board of directors of the Palo Verde Drainage District, to execute six hundred thousand dollars of bonds voted upon at an election held in said Palo Verde Drainage District on the twenty-eighth day of October, 1921.

The Palo Verde Drainage District was organized in August, 1921, by proceedings initiated under an act entitled, "An act to provide for the organization and government of drainage districts, for the drainage of agricultural lands other than swamp and overflowed lands, and to provide for the acquisition or construction thereby of works for the drainage of the lands embraced within such districts." (Stats. 1903, p. 291; Stats. 1909, p. 1061; Stats. 1915, p. 1321; Stats. 1921, p. 38.)

In 1923 the Palo Verde Irrigation District was formed pursuant to an act known as "Palo Verde Irrigation District Act." (Stats. 1923, p. 1067.) Prior to the passage of this act there were three agencies in the Palo Verde Valley attempting, separately and independently, to take care of levee protection, drainage, and distribution of water to the valley. These agencies were respectively the Palo Verde Joint Levee District, the Palo Verde Drainage District, and the Palo Verde Mutual Water Company. To eliminate the inefficiency and extra expense incident to the functioning of these three separate and independent agencies the legislature passed the Palo Verde Irrigation District Act, providing for the taking over by the Palo Verde Irrigation District of the

Palo Verde Mutual Water system, the functions and properties of the levee district and of the drainage district, and the management and financing of all these enterprises through a unified and comprehensive method. It was the theory of the act that upon its going into effect the three pre-existing agencies would become merged in the joint irrigation district and it would become the successor to all of their and each of their properties, powers, duties, and obligations.

Previous to the organization of the Palo Verde Irrigation District the Palo Verde Drainage District, pursuant to the act under which it was organized and the acts amendatory thereto, authorized the execution, issuance, and sale of certain bonds. Two hundred and fifty thousand dollars of the bonds had, previous to the organization of the consolidated Palo Verde Irrigation District, been disposed of, but six hundred thousand dollars of the bonds remained unsold at the time the Palo Verde Irrigation District was organized. By the provisions of section 22 of the "Palo Verde Irrigation District Act" the Palo Verde Irrigation District was authorized to sell any of the bonds of the Palo Verde Drainage District which were not sold at the time the Palo Verde Irrigation District was organized.   (Stats. 1923, p. 1099.)

In view of the fact that there was some question as to the constitutionality of the act creating the Palo Verde Irrigation District, the trustees of the Palo Verde Irrigation District and the board of directors of the old Palo Verde Drainage District proceeded independently to pass resolutions declaring the intention of said boards to sell and authorized and offering for sale twelve hundred bonds, being all of the unsold bonds of the Palo Verde Drainage District previously authorized and remaining unsold.   Both the trustees of the Palo Verde Irrigation District and the directors of the Palo Verde Drainage District gave notice of the proposed sale by publication of a notice thereof for more than three weeks and both boards by separate resolutions, duly adopted, accepted the bid of D. A. Foley & Company.   This bid was for the sum of ninety-one cents on the dollar of the face value of the bonds, or a total principal sum of five hundred and forty-six thousand dollars, plus interest which has or will accrue thereon to the date of delivery of the bonds. By the terms of said respective resolutions the purchaser of

the bonds was authorized to pay the money to the county treasurer of Riverside County, to be disbursed and used only for the purposes for which said bonds were authorized to be issued, and under the provisions of the Drainage Act of 1903, as amended, in pursuance of which said drainage district was organized.

The first question presented by the petition is whether or not the remaining unissued bonds of the Palo Verde Drainage District which are now proposed to be sold shall be signed and certified by the president and secretary of the Palo Verde Irrigation District or by the president and secretary of the old Palo Verde Drainage District.

[1] The Palo Verde Irrigation District Act, under which the Palo Verde Irrigation District was organized, has been declared to be constitutional and the organization of the Palo Verde Irrigation District has been held to be regular and valid. (*Barber* v. *Galloway, ante,* p. 1 [231 Pac. 34].) It therefore follows that the president and secretary of the board of trustees of that district are the proper officers to sign their names to the bonds and the proper officers to affix the seal of the Palo Verde Irrigation District to the bonds. Inasmuch as the Palo Verde Irrigation District is lawfully created and existing, no authority now exists authorizing or requiring Herman Bahls, as president of the Palo Verde Drainage District, to execute the bonds, for the district of which he is supposed to be an officer no longer exists and he is no longer in office.

By section 13 of the Palo Verde Irrigation District Act the Palo Verde Irrigation District was "authorized and empowered, through its board of trustees, to take over the properties, property rights and functions of the Palo Verde Drainage District." It further provides that as soon as the organization of the Palo Verde Irrigation District is complete, "all of the canals, properties, property rights and *functions* of the Palo Verde Drainage District . . . shall revert to and become vested in" the Palo Verde Irrigation District and that the trustees of the Palo Verde Irrigation District "shall take over and become vested with the management of all canals, reclamation work, properties, records, moneys on hand or other assets of said drainage district" and the trustees of the Palo Verde Drainage District "shall deliver all of such property, records or other assets" to the

trustees of the Palo Verde Irrigation District, and thereupon the Palo Verde Drainage District shall ''be deemed to be merged in and superseded by this district [Palo Verde Irrigation District] and cease to exist except in so far as may be necessary to preserve the rights of bondholders and other creditors.'' This section makes it the imperative duty of the board of trustees of the Palo Verde Irrigation District to take over the properties and functions of the Palo Verde Drainage District and further provides that as soon as the organization of the irrigation district is complete by the qualification of its officers, the properties and functions of the drainage district shall *ipso facto* become vested in the irrigation district and the drainage district shall thereupon cease to exist. Obviously, if the drainage district has ceased to exist, the officer of director, or of president of the board of directors, has ceased to exist. **[2]** It is the general rule that bonds are to be executed by persons who are in office at the time they sign the bonds. (*Gage* v. *McCord,* 5 Ariz. 227 [51 Pac. 977] ; *Yesler* v. *City of Seattle,* 1 Wash. 308 [25 Pac. 1014] ; *Coler* v. *Cleburne,* 131 U. S. 162 [33 L. Ed. 146, 9 Sup. Ct. Rep. 720, see, also, Rose's U. S. Notes] ; Dillon on Municipal Corporations, p. 1371.) It is clear, therefore, that Herman Bahls, no longer being in office, is under no duty to sign any of the bonds.

It has been pointed out that the president of the board of directors of the drainage district is not qualified to act by reason of the fact that all the properties, property rights, and functions of that district have become vested in the irrigation district and the duties and functions of the officers of the drainage district have been conferred upon the officers of the irrigation district. It follows, therefore, that the president and secretary of the irrigation district are the proper officials to sign the bonds of the drainage district and that the bonds having been regularly authorized to be sold, it is the duty of these officers to give validity and authenticity to these bonds by affixing their signatures thereto.

By section 22 of the Palo Verde Irrigation District Act the Palo Verde Irrigation District is specifically and expressly given the power to sell bonds of the ''Palo Verde Drainage District which are not sold at the time this district [Palo Verde Irrigation District] is organized and the property and the affairs of the said . . . drainage district are

taken over." The legislature was aware that by the creation of the irrigation district the drainage district ceased to exist, and it follows, therefore, that when it conferred upon the irrigation district the authority to dispose of the drainage district's bonds remaining unsold, it by necessary implication conferred upon the irrigation district all of the powers necessary to the consummation of the sale, including that of the signing of the bonds by its officers. [3] Where a power to sell is conferred upon an officer of a corporation or upon an attorney in fact, it carries with it the power to execute all necessary instruments to the consummation of the sale. The Palo Verde Irrigation District Act designates, in the provision for the issuance of bonds of the irrigation district, the president and secretary of the board of trustees as the proper officers to execute the bonds. By analogy, if the power of signing the bonds of the drainage district has been conferred upon the irrigation district, the proper officials to sign the bonds are the president and secretary of the board of trustees of the irrigation district.

However, the conclusion that the power of signing the bonds is vested in the proper officers of the irrigation district is not based alone upon the implication of the power to sign from the power to sell. Sections 9 and 10 of the Palo Verde Irrigation District Act give power to the irrigation district and to its board of trustees to perform other acts necessary to carry out the purposes of the act, and, therefore, provide, we think, for the execution of these bonds by the irrigation district.

Thus, section 9 of the Palo Verde Irrigation District Act provides that the district shall have the power "To do and perform all other things necessary, incident or proper to carry into effect the purposes for which this district is created, and as provided by this act."

Section 10 provides: "The board of trustees shall also have power generally to perform all other such acts as shall be necessary to fully carry out the purposes of this act."

Moreover, it is to be borne in mind that by section 13, hereinbefore quoted, of the Palo Verde Irrigation District Act, all of the functions of the old drainage district and its officers were expressly vested in the irrigation district. One of the functions of the officers of the old drainage district was the proper execution of the bonds of the district, and

the transfer of the functions of the old drainage district to the new irrigation district necessarily included, we think, this power to execute the bonds.

[4]   It is true that section 22 of the Palo Verde Irrigation District Act, which confers upon the irrigation district the power to sell the bonds of the drainage district, provides that the funds derived from the sale of the old drainage district bonds "must be used only for the purpose for which such bonds were issued, and may only be sold and disposed of in the manner and in accordance with the terms and provisions of said bonds, and of the act under which the same were created." This provision does not, however, necessarily mean that the bonds must be signed by the officers of the old drainage district and thereby exclude the idea that the power of signing the bonds was conferred upon the officers of the irrigation district. Read literally, the inference is perhaps permissible that the bonds were to be signed by the president and secretary of the old drainage district, because the proceedings under which the bonds were created so provide. However, when read in conjunction with the intention of the legislature to abolish the old drainage district and its officers, it is apparent that this is not the proper interpretation. This provision deals only with the "sale and disposal" of the bonds in accordance with the terms and provisions of said bonds and of the act under which the same were created. Obviously, the legislature in this provision was dealing, not with the matter of signing the bonds, but with the matter of actually disposing of the bonds after they had been properly signed and authenticated. In other words, by this provision the legislature was safeguarding the rights of the creditors of the old drainage district, as it was in duty bound to do. The bonds had been authorized by the electors of the district upon definite conditions as to the amounts, denominations, interest rates, dates of maturity, amounts for which they could be sold, manner of receiving bids, manner of payment and redemption, and the condition as well that the proceeds must be used only for certain definite purposes. These were limitations placed upon the authority to issue the bonds, which the legislature obviously intended should continue in effect. In short, the provisions of section 22 were, we think, intended solely as a protection to the substantial rights of the bondholders.

No claim is made here that the manner and method followed by the drainage district, in its authorization of the issuance of the bonds, or of the irrigation district in its authorization of the sale of the bonds, was in any way irregular. We are satisfied that under the provisions of section 22, authorizing the sale of the unsold bonds of the drainage district by the irrigation district after its organization, and the provisions of sections 9 and 10, delegating to the officers of the irrigation district the power to execute all necessary instruments, together with the provisions of section 13, vesting all of the functions of the old drainage district and its officers in the irrigation district, the president and secretary, as officers of the irrigation district, have the power and the authority to sign and authenticate the bonds of the drainage district.

[5] An objection is made to the signing and execution of the bonds by the officers of the irrigation district upon the ground that these officers are not charged with the duty of ascertaining that all matters recited in the drainage bonds are true, and, as a consequence, it may possibly result that *bona fide* purchasers will not be protected by estoppel on the strength of recitals in the bonds, after the bonds have been executed. Respondents are fearful, it seems, that the purchasers of the drainage bonds will be deprived of the benefit of the rule, which has been applied particularly to municipal bonds, that *bona fide* holders are protected by the recitals therein that an election authorizing the issuance has been duly and regularly held, that the terms of the statute have been complied with, or that any and all acts have been done, the performance of which is incumbent upon the authorities issuing the bonds. The irrigation district was authorized to take over the functions of the drainage district. This necessarily means that the officers of the irrigation district were thereby empowered to take over the functions of the officers of the drainage district. Consequently, if the officers of the drainage district were charged with the duty of ascertaining that all matters recited in the drainage district bonds were true, and had the authority to inquire into and ascertain the correctness of those statements, that duty now devolves upon the officers of the irrigation district. That portion of the statute which is authority for the transfer of functions in general is authority for the transfer of the particular func-

tion of inquiring into and ascertaining the correctness of the recitals contained in the bonds. It, therefore, follows that the principles of estoppel in the particulars stated by virtue of recitals in the bonds will apply as effectually for the benefit of *bona fide* purchasers of the bonds signed by officers of the irrigation district as they will apply for the benefit of the *bona fide* purchasers of the bonds already sold by the drainage district and signed by the officers of the drainage district.

[6] The other question presented by the petition is whether or not the bonds which were voted and authorized by the drainage district prior to the organization of the Palo Verde Irrigation District may be sold for less than par.

We are of the opinion that they may be. At the time the electors of the drainage district authorized the issuance of the entire eight hundred and fifty thousand dollars of bonds, the amendment of 1921 to the act providing for the organization and government of drainage districts (Stats. 1921, p. 38), authorizing bonds to be sold for any price above ninety cents on the dollar, was in force. Section 22 of the Palo Verde Irrigation Act specifically provided that the bonds should be sold and disposed of in accordance with the terms and provisions of the act under which they were authorized —the act providing for the organization and government of drainage districts. It thereby authorized the sale for any price above ninety cents on the dollar.

[7] The provision of section 23 of the Palo Verde Irrigation District Act that ''if the board of trustees of this district deems it desirable that said board shall be authorized to sell said bonds for less than the par value thereof, the board may call a special election to submit to the qualified voters of the district such proposition'' does not forbid the sale of the drainage district bonds for less than par unless authorized by a special election. Clearly, such provision deals only with the bonds issued by the irrigation district itself. It is true that section 23, which contains the expression ''said bonds,'' immediately follows section 22, which provides for the sale of bonds of the irrigation district, the joint levee district, and the drainage district. This fact is the only argument advanced against the right to sell the bonds of the drainage district for less than par. While the opening sentences of section 23, if read alone, might warrant

the construction that an authorization by special election was necessary to confer the power to sell the bonds for less than par, nevertheless when section 23 is read in its entirety no such construction is possible. By the provisions of section 23 the question of whether the bonds shall be sold for less than par is to be submitted to the voters of the district. It is provided in the act that the term "the district" wherever used has reference to the irrigation district. (Stats. 1923, p. 1068.) The proposition, therefore, is to be determined by the voters of the entire irrigation district. If this section had reference to the drainage district bonds as well as the bonds of the irrigation district, the legislature would not, we think, have provided for the submission of that question to the property owners of the entire irrigation district. The property owners within the drainage district are alone charged with the obligation of discharging the bonds and the use of the proceeds of the bonds is confined exclusively to the property within the drainage district. The owners of property within the irrigation district, but outside of the drainage district, are not concerned with the question of whether or not these bonds are sold for less than par. It is not probable that the legislature intended to subject the owners of property within the drainage district, who have already authorized the bonds to be issued for less than par, to the risk of having their vote overruled by the vote of outsiders who have no interest or concern in the matter.

Moreover, the form of the proposal to be submitted to the voters refers only to the bonds of the irrigation district. Section 23 provides that the proposal shall be stated substantially in the following form: "Shall the board of trustees of the Palo Verde Irrigation District be authorized to sell bonds of *the district* for less than the par value thereof?" As before pointed out, "the district" refers to the Palo Verde Irrigation District.

The concluding portion of section 23, dealing with the exchange of bonds for properties, especially the properties of the Palo Verde Mutual Water Company, deals only with the bonds of the irrigation district and would seem to indicate that the whole section has reference only to the bonds of the irrigation district.

Even if there be merit in the contention of the petitioner that, inasmuch as the bonds were regularly and properly

authorized to be issued under and in pursuance of an act which authorized their sale for less than par, any attempt to subsequently restrict the power of sale of the bonds would be unavailing, nevertheless, since we are of the opinion that the legislature was not attempting, by section 23 of the Irrigation District Act to restrict the sale of the drainage district bonds, but only restricting the sale of the irrigation district bonds, this question need not be decided and discussed here.

Let the writ issue directed to A. E. Warmington, as president of the board of trustees of the Palo Verde Irrigation District, commanding him to sign the bonds in controversy. The writ as to respondent Herman Bahls is denied.

Shenk, J., Seawell, J., Lawlor, J., Richards, J., Myers, C. J., and Waste, J., concurred.

Rehearing denied.

All the Justices concurred.