[L. A. No. 8160. In Bank.—December 1, 1924.]

ALLYN H. BARBER, Appellant, v. A. T. GALLOWAY et al., Respondents.

[1] RECLAMATION DISTRICTS — POWER OF LEGISLATURE — DIVISION, CHANGE OR MODIFICATION—RIGHTS OF CREDITORS.—The legislature has plenary power over districts organized for reclamation purposes, and it may divide, change, or modify them at pleasure, but the rights of existing creditors cannot be impaired and, while the creation of a new district embracing within its limits an existing district extinguishes the latter for most purposes, the rights of creditors against it cannot be thereby extinguished or rendered unenforceable.

[2] ID.—PALO VERDE IRRIGATION DISTRICT ACT—PALO VERDE LEVEE DISTRICT ACT—CONSTRUCTION—RIGHTS OF CREDITORS.—The contention that under section 28 of the Palo Verde Irrigation District Act (Stats. 1923, p. 1067), providing for levying a tax upon all the "lands and improvements thereon" in the former Palo Verde Levee District, as the term "Improvements" does not include "personal property" the rights of the holders of the bonds of the old levee district are impaired in that the personal property within the levee district boundaries, assessable under the Palo Verde Levee District Act (Stats. 1905, p. 327), is no longer liable for repayment of the bonds, cannot be maintained.

[3] STATUTORY CONSTRUCTION—MEANING OF ACT—LEGISLATIVE INTENT.—A statute should always be so construed, if reasonably possible, as to give each part thereof the meaning and effect which, from the act as a whole, appears to have been intended.

[4] RECLAMATION DISTRICTS—PALO VERDE IRRIGATION DISTRICT ACT—CONSTRUCTION—RIGHTS OF CREDITORS—TAXATION OF PERSONAL

---

1. See 9 Cal. Jur. 851.
3. See 25 R. C. L. 960, 1004.

PROPERTY OF LEVEE DISTRICT—BONDS.—From the provisions of sections 12, 26 and 27 of the Palo Verde Irrigation District Act it is apparent that the legislature intended to reserve all existing rights of holders of bonds of Palo Verde Levee District, and, in particular, that the personal property within said levee district was to remain taxable for the purpose of meeting the obligations of the bonds of that district.

[5] ID.—METHOD OF ASSESSMENT — BONDS.—Considering the Palo Verde Irrigation District Act as a whole, it cannot be held that there is any change in the method of assessment of properties which impairs the obligation of any outstanding bonds of the old districts.

[6] STATUTORY CONSTRUCTION—RETROACTIVE EFFECT—VESTED RIGHTS. Statutes will never be considered to operate retroactively to disturb vested rights unless a contrary intent is unmistakable.

[7] RECLAMATION DISTRICTS—PALO VERDE IRRIGATION DISTRICT ACT— VALIDITY OF—MAINTENANCE OF EXISTING LEVEES.—The Palo Verde Irrigation District Act is not illegal because all expense of maintaining existing levees is imposed only upon the properties originally liable therefor, namely, upon the properties within the boundaries of the levee district, as there was no error in continuing the obligation as to the maintenance of existing levees upon the property found to be benefited thereby at the time the district was originally created.

[8] ID.—SUBSEQUENTLY ACQUIRED PROPERTY.—The contention that the Palo Verde Irrigation District Act declares that the entire district is benefited by the maintenance of existing canals and levees and that therefore the cost of such maintenance should be spread over the entire irrigation district cannot be maintained, as this declaration of the act (sec. 28, Stats. 1923, p. 1104), refers to properties acquired after the organization of the district.

[9] ID.—COLLECTION OF TAXES—PERSONAL ACTION.—Even if the language of section 28 of the Palo Verde Irrigation District Act, providing that taxes levied as therein provided shall be a lien upon the lands and properties in the district in the same way as are county taxes, be interpreted to authorize the recovery by personal action against the property owner and therefore invalid as to assessments to meet obligations of the new irrigation district, it would not render the whole act unconstitutional but merely this provision for a personal judgment.

6. See 25 R. C. L. 786.

9. Effect of partial invalidity of statute, notes, Ann. Cas. 1916D, 9, 104, 127, 136, 139, 158, 171; Ann. Cas. 1918D, 1123.

[10] ID.—EXEMPTIONS—PROPERTY OF VETERANS, CHURCHES, AND PUBLIC UTILITIES.—The contention that the Palo Verde Irrigation District Act is invalid in exempting from taxation the property of veterans, churches, and public utilities cannot be maintained, as the exemptions of the property of veterans and churches contained in the general taxation laws do not apply to assessments under this act, and if there are properties of public utilities within the districts and these properties come within the constitutional exemption, this act would not be rendered unconstitutional for failing to tax properties that the constitution prohibited taxing.

[11] ID.—DEFINING BOUNDARIES OF IRRIGATION DISTRICT—PROPERTIES BENEFITED—DETERMINATION BY LEGISLATURE—VALIDITY OF ACT.—The Palo Verde Irrigation District Act is not invalid because it defines the boundaries of the irrigation district and declares what properties are deemed to be benefited and provides for the levying of assessments without giving property owners within the district an opportunity to be heard on these questions, as where such acts are performed by the legislature itself, there is no necessity for a provision for further opportunity for a hearing on the part of the property owners.

[12] ID.—ELECTIONS—QUALIFICATIONS OF ELECTORS.—The provisions of the constitution forbidding discrimination as among citizens with respect to privileges and immunities and with respect to qualifications of voters and the secrecy of the ballot, are not applicable, in and of themselves, to elections in districts of the character of reclamation districts.

[13] ID.—RIGHT OF CORPORATION TO VOTE.—The matter of voting at elections of reclamation districts is not the exercise of the right of suffrage in the ordinary sense, and a voice in the organization, selection of officers, and issuance of bonds of reclamation districts, which materially affect the property of a corporation, is a legitimate concern of corporate ownership; and, assuming that article XII, section 1, of the constitution has any application, it cannot be said that the legislature, by giving a voice in such matters to corporations owning land within the boundaries of the irrigation district, is enlarging their chartered corporate powers.

[14] ID.—SUBJECTS PROPERLY INCLUDED IN SINGLE ACTS.—The projects of irrigation, drainage protection, and reclamation of

10. Effect of invalidity of exception to statute, note, Ann. Cas. 1916D, 26.

14. When title of statute embraces but one subject, and what may be included thereunder, note, 79 Am. St. Rep. 456. See, also, 25 R. C. L. 843, 845.

every character, including the eradication of insect pests, are so closely related and interdependent as to constitute a single scheme and to be properly included within a single act.

[15] ID.—MUNICIPAL CORPORATIONS—SPECIAL LAWS.—Since reclamation districts are not, strictly speaking, municipal corporations within the meaning of the constitutional provisions forbidding the creation of municipal corporations by special laws, but are merely *quasi* corporations and public agencies to carry out specific purposes, the Palo Verde Irrigation District Act cannot be successfully attacked upon the ground that it is an attempt to create a corporation for municipal purposes by special law.

[16] ID.—ASSUMPTION OF DEBTS OF LEVEE AND DRAINAGE DISTRICT.— The provision of the Palo Verde Irrigation District Act that the Irrigation District shall assume all of the outstanding indebtedness of the former Palo Verde Levee District, whether known or unknown, and also of the Palo Verde Drainage District, does not violate the rule laid down in *Reclamation District* v. *Birks,* 159 Cal. 233, as it does not purport to render land within the irrigation district and not within either the former levee district or drainage district liable for the debts of said district.

[17] ID.—SITUS OF DISTRICT.—The situs of a reclamation district is within the boundaries of that district and in that county where the principal business is transacted, which place cannot be determined until the board of trustees opens its office and commences the transaction of business, and this is the only meaning to be accorded to section 38 of the Palo Verde Irrigation District Act, providing that certain proceedings may be brought in the superior court in the county wherein the office of the board of trustees of the district is located, by any assessment payer of the district, which provision is not in contravention of the constitution.

[18] ID.—NOTICE OF ELECTION—TIME.—The Palo Verde Irrigation District Act requires that notice of an election to be held for the purpose of determining whether or not the district shall be organized must be published at least twenty days prior to the date of the election, but there is no requirement that the election be held within sixty days from the date on which the act went into effect.

[19] ID.—SINKING FUND—REPAYMENT OF BONDS.—There is no constitutional requirement concerning the establishment of a sinking

15. See 9 **Cal. Jur.** 851, 856; 18 **Cal. Jur.** 697, 701.

fund for the repayment of bonds of a reclamation district, and the date for the establishment of a sinking fund is purely a matter within the discretion of the legislature.

(1) 19 C. J., p. 621, sec. 22, p. 624, sec. 30.   (2) 40 Cyc., p. 824. (3) 36 Cyc., p. 1128.   (4) 40 Cyc., p. 822.   (5) 40 Cyc., p. 824. (6) 36 Cyc., pp. 1205, 1208.   (7) 40 Cyc., p. 817.   (8) 40 Cyc., p. 817.   (9) 36 Cyc., p. 982.   (10) 40 Cyc., p. 817.   (11) 40 Cyc., p. 820.   (12) 40 Cyc., p. 821.   (13) 36 Cyc., p. 1001.   (14) 36 Cyc., p. 1022.   (15) 40 Cyc., p. 817.   (16) 40 Cyc., p. 824 (Anno.).   (17) 36 Cyc., p. 1013.   (18) 40 Cyc., p. 819.   (19) 40 Cyc., p. 822.

APPEAL from a judgment of the Superior Court of Riverside County. G. R. Freeman, Judge. Affirmed.

The facts are stated in the opinion of the court.

Dean Edgerton for Appellant.

L. M. Chapman and Ward Chapman for Respondents.

LENNON, J.—The present action was instituted to test the validity of an irrigation district in the Palo Verde Valley. The land of this district has long suffered from floods and inundation from the Colorado River and, for the purpose of securing levee protection, the Palo Verde Levee District of Riverside and Imperial Counties, California, was created in 1918 under the act of the legislature known as the Levee District Act of 1905 (Stats. 1905, p. 327). In 1921 an independent organization, known as the Palo Verde Drainage District, undertook the drainage projects in this valley. Distribution of water to lands under cultivation was under the control of the Palo Verde Mutual Water Company, a private corporation operated independently of the districts mentioned. For the purpose of eliminating the inefficiencies and extra expense occasioned by the functioning of the three above-mentioned separate and independent agencies, the legislature passed the Palo Verde Irrigation District Act (Stats. 1923, p. 1067), providing for the taking over of the Palo Verde mutual water system, the functions and properties of the levee district and of the drainage district, and the management and financing of all these enterprises through unified and comprehensive method. The present action was brought under section 7 of the last-

mentioned act, which provides that the validity of the election for the organization of the irrigation district authorized to be created by that act may be tested by any person owning property within the proposed district. Upon this appeal from the judgment of the superior court upholding the constitutionality of the act plaintiff raises a number of questions as to the constitutionality of the act. Plaintiff also questions the regularity of the proceedings for the organization of the district.

[1] It is settled in this state that the legislature has plenary power over districts organized for reclamation purposes. It may divide, change, or modify them at pleasure. Of course, the rights of existing creditors cannot be impaired and, while the creation of a new district embracing within its limits an existing district extinguishes the latter for most purposes, nevertheless the rights of creditors against it cannot be thereby extinguished or rendered unenforceable. (*Reclamation District* v. *Birks*, 159 Cal. 233 [113 Pac. 170].) [2] Plaintiff contends that, by certain provisions of the Palo Verde Irrigation District Act, the legislature has attempted to impair the rights of creditors of the Palo Verde Levee District. This contention is based upon the following reasons:

The act under which the old levee district was organized made provision for an assessment and taxation of all the lands, improvements, and personal property within the district, as shown by the assessment-roll, and the bonds of the district were to be paid by money raised in this manner. The Palo Verde Irrigation District Act provides for three different rates, one to be levied within the boundaries of the old levee district, one to be levied within the boundaries of the old drainage district, and the third to apply throughout the new irrigation district. The intention is to redeem the outstanding bonds of the levee district by taxation upon the properties within the former boundaries of the said levee district. In this connection plaintiff calls attention to the following language of section 28 of the Irrigation District Act: "At the time when by law it is the duty of the board of supervisors of each of said counties to fix the annual tax rate for said respective counties of Riverside and Imperial, the said boards of supervisors, taking as a basis the last previous report of the board of trustees

of the estimated amount to be required to be raised for the forthcoming fiscal year and the valuation of the *lands and improvements thereon* within the district . . . must levy a tax upon all of the *lands with improvements thereon* in the'' boundaries of the former levee district. Since the term ''improvements'' does not include ''personal property,'' either technically or as commonly used, it is argued that the rights of the holders of the bonds of the old levee district are impaired in that the personal property within the levee district boundaries is no longer liable for repayment of the bonds.

[3] ''A statute should always be so construed, if reasonably possible, as to give each part thereof the meaning and effect which, from the act as a whole, appears to have been intended.'' (*In re Reineger*, 184 Cal. 97, 103 [193 Pac. 81].) [4] Looking to section 12 of the Irrigation District Act we find that the taking over of the properties and functions of the levee district is made expressly ''subject, however, to the rights of the holders of any and all of the bonds or other outstanding claims or evidence of indebtedness of said Palo Verde Joint Levee District, and the lien of all such bonds and all rights of the bondholders and creditors of said levee district shall be unimpaired and enforceable against the lands and property owners within the boundaries of said Joint Levee District to the same extent and in like manner as if this act had not been passed, and said district continued to exist; . . . and the collection of principal and interest may be enforced through this district in like manner as it might have been enforced through the Joint Levee District, and the board of trustees of this district is hereby authorized and empowered, and it shall be its duty to carry into effect and perform, all of the obligations undertaken by said levee district through this district, and the trustees thereof, for the assessment and collection of taxes for the payment of the principal and interest of said bonds and other indebtedness, and all other obligations and duties in every other respect provided for the protection, payment, and liquidation of the principal and interest of the bonds and other indebtedness, and all other obligations and duties in every other respect provided for the protection, payment and liquidation of the principal and interest of the bonded and other indebtedness of said Joint Levee Dis-

trict.'' Furthermore, section 26 of said act provides that the trustees of the irrigation district shall submit to the boards of supervisors statements showing the estimated amount of money required for meeting installments of interest upon any of the outstanding bonds of the levee district or the drainage district or the bonds of the irrigation district, and section 27 provides that the boards of supervisors shall be furnished with detailed statements of the total assessed value ''of all real property, with the improvements thereon, within the boundaries of the district: . . . and said statement shall indicate what part of said total assessed valuation applies to lands with improvements thereon within the boundaries of the Palo Verde joint levee district . . . but not within the boundaries of the Palo Verde drainage district; and likewise what part of said valuation applies to lands within the Palo Verde drainage district but not included within the boundaries of the Palo Verde levee district. Said statement shall also indicate the value of all *personal property* assessable within said joint levee district, and all other data necessary to enable the board of supervisors of their respective counties or the board of trustees of this district, to fix the tax rate or to levy such assessments upon the taxable property within all of said districts which may be taxable therefor under the provisions of this act or the acts under which said joint levee district and drainage district were organized.'' From the foregoing provisions of the Irrigation District Act it is apparent that the legislature intended to preserve all existing rights of holders of bonds of the Joint Levee District and, in particular, that the personal property within said former district was to remain taxable for the purpose of meeting the obligations of the said bonds. While it is true that section 28 of the act omits to provide for the assessment of a tax upon *personal property* within the boundaries of the former levee district, for the purpose of paying the bonds of said district, there is no provision in that section that such property shall not be assessable and the provisions of the sections 12, 26, and 27, herein referred to, clearly indicate that the intent was that such property should continue to be taxed for that purpose.'

[5] Therefore, considering the act as a whole, it cannot be held that there is any change in the method of assessment of properties which impairs the obligation of any outstand-

ing bonds of the old districts. **[6]** Statutes will never be construed to operate retroactively to disturb vested rights unless a contrary intent is unmistakable. (*Montecito County Water Dist.* v. *Doulton,* 193 Cal. 398 [224 Pac. 747].) We find no such intent in the Irrigation District Act.

**[7]** Appellant contends that the act is illegal for the reason that all expense of maintaining existing levees is imposed only upon the properties originally liable therefor, namely, upon the properties within the boundaries of the levee district. We see no error in continuing the obligation as to the maintenance of existing levees upon the property found to be benefited thereby at the time that the district was originally created. **[8]** Nor is there any merit in the argument that, since the act in question, according to appellant's construction, declares that the entire district is benefited by the maintenance of existing canals and levees, the cost of such maintenance should be spread over the entire irrigation district. The language upon which appellant seeks to place this construction is as follows:

"But all properties acquired by this district after its organization, and all construction work or improvements in the way of providing, maintaining, and operating water works, protection work or reclamation work in the entire district, shall be deemed to be, and is hereby declared to be for the benefit of all lands within the district." (Sec. 28, Stats. 1923, p. 1104.)

This language obviously refers to properties acquired *after the organization of the district.* The properties within the levee and drainage districts were acquired by the irrigation district by virtue of the process of organization and not *after its organization* had been completed. By reason of being substituted for the old organizations, the new organization acquired the powers of management formerly vested in the levee and drainage districts. Obviously the wording of the act above quoted refers only to additional property acquired and construction work and improvements made after the organization and used for the benefit of the entire district.

**[9]** Another point urged by appellant in support of his contention that the act is invalid is the fact that section 28 of the act provides as follows: "All taxes so levied as herein provided shall be a lien upon the lands and properties in

said district in the same way as are county taxes.'' It is argued that, since the Political Code authorizes the recovery of county taxes by personal action against the property owner, the effect of the foregoing provision of the Irrigation District Act is to permit the collection of assessments in the irrigation district by means of personal judgments against the property owners within said district. It is contended that the provision is not invalid as to the collection of taxes to meet the obligations of the old levee district and drainage district but it is invalid as to assessments to meet obligations of the new irrigation district. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Reclamation District,* 173 Cal. 91 [159 Pac. 430].) However, under the authority of *Taylor* v. *Palmer,* 31 Cal. 241, even if the language of the irrigation act be accorded the interpretation contended for, it would not render the whole act unconstitutional but merely that portion of the act which purports to authorize a personal judgment in an action for the collection of assessments to meet the debts of the irrigation district. The land within the irrigation district furnishes the security for the payment of the assessments of such district and the mere attempt to secure additional security by providing for a personal judgment would not have the effect of rendering the whole act unconstitutional but merely that portion of it attempting to provide for such judgments. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Reclamation District, supra.*) In this connection it is to be noted that the act contains the provision that ''if any section, subsection, sentence, clause or phrase of this act is, for any reason, held to be unconstitutional such decision shall not affect the validity of the remaining portions of this act.'' (Sec. 61.)

[10] The suggestion that the act exempts from taxation the property of veterans, churches, and public utilities although such property is benefited by the improvements, and that it is invalid for that reason, is likewise without merit. The only references to the general taxation laws in the act are to those laws which pertain to the enforcement of the payment of taxes. All lands and improvements are required to be assessed uniformly. Therefore, the exemptions of the property of veterans and churches contained in the general taxation laws do not apply to assessments under this act. Whether or not the properties of public utilities are assess-

able under this act need not be here determined. If there are such properties within the districts and these properties come within the constitutional exemption, the act would not, of course, be rendered unconstitutional for failing to tax these properties if the constitution itself prohibited the taxation of such properties under the circumstances.

[11]  While urging that the act is invalid for the reason that it defines the boundaries of the irrigation district and declares what properties are deemed to be benefited and provides for the levying of assessments without giving property owners within the district an opportunity to be heard on these questions, appellant at the same time admits that this court has in many cases declared that, where such acts are performed by the legislature itself, there is no necessity for a provision for further opportunity for a hearing on the part of the property owners. As stated in *Los Angeles Flood Control* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028], ''the legislature, when it fixes the district itself, is supposed to have made proper inquiry and to have finally and conclusively determined the fact of benefits, . . . and a citizen has no constitutional right to any other or further hearing upon the question. . . . The mere passage of the act, then, must be taken to import a finding by the legislature that the proposed work will answer a public purpose, and that its execution will benefit the land within the district to such an extent as to warrant the imposition upon such land of the costs in the manner provided.''

[12]  The fact that the legislature has prescribed a property qualification for voters within the district and has permitted only those to vote who own property of an assessed valuation of fifty dollars ($50) or more does not invalidate the act. The provisions of the constitution forbidding discrimination as among citizens with respect to privileges and immunities and the provision of law with respect to qualifications of electors and the secrecy of the ballot are not applicable, in and of themselves, to elections in a district of this character. In the case of *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373 [103 Pac. 207], where the special act creating the drainage district permitted voting by proxy, as in the present case, and prescribed a property qualification of one hundred dollars ($100), the court said: ''No violence is done by the act to the constitutional inhibition

against requiring a property qualification for a voter. . . . The assessments are for local improvements, and not for general purposes of taxation, and the legislature permits the land owners to appoint their own agents. The method which it imposes upon the land owners in making the selection is wholly within its control; for, as has been said, it is not compelled to give the land owners any right in that selection." (See, also, *Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983]; *Bliss* v. *Hamilton,* 171 Cal. 123 [152 Pac. 303].)

[13] Section 6 of the Palo Verde Irrigation District Act (Stats. 1923, p. 1078) provides that, "The vote of any public or *quasi*-public corporation, private corporation or unincorporated association, may be cast by any person authorized by the board of directors or trustees or other managing body thereof. . . . " It is contended, in effect, that this provision of the act is an enlargement, by special act of the legislature, of the chartered powers of corporations which happen to own lands within the irirgation district, and is, therefore, prohibited by article XII, section 1, of the constitution. It may be conceded, as is contended, that corporations may only be organized for purposes for which individuals can lawfully associate themselves, but it must also be conceded that corporations may be organized for the purpose of acquiring and holding property and, therefore, may be accorded all powers necessarily incident to the maintenance, protection and management of those properties. The matter of voting at elections of the character involved here is not the exercise of the right of suffrage in the ordinary sense (*People* v. *Reclamation District,* 117 Cal. 114 [48 Pac. 1016]; *Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983].) And, obviously, a voice in the organization, the selection of the officers, and the issuance of bonds, of districts of the character under consideration here, which materially affect the property of the corporation, is a legitimate concern of corporate ownership. And, assuming that article XII, section 1, of the constitution, has any application to the point presented, it cannot be said that the legislature, by giving a voice in such matters to corporations owning land within the boundaries of the irrigation district, is enlarging their chartered corporate powers.

[14] The objection is also raised that the act embraces more than one subject, namely, irrigation, drainage protec-

tion, health regulations, and eradication of insect pests, and that it is an attempt to create a corporation for municipal purposes by special law. The projects of irrigation, drainage protection, and reclamation of every character, including the eradication of insect pests, are so closely related and interdependent as to constitute a single scheme and to be properly included within a single act. (*Tarpey* v. *McClure, supra; People* v. *Sacramento Drainage District, supra; Los Angeles Flood Control* v. *Hamilton, supra.*) [15] Since these districts are not, strictly speaking, municipal corporations within the meaning of the constitutional provisions forbidding the creation of municipal corporations by special laws, but are merely *quasi* corporations and public agencies to carry out specific purposes, the act cannot be successfully attacked upon the ground that it is an attempt to create a corporation for municipal purposes by special law. (*Reclamation District* v. *Birks, supra; People* v. *Sacramento Drainage Dist., supra; Reclamation District* v. *Industrial Acc. Com.*, 175 Cal. 559 [166 Pac. 323].)

[16] The provision that the irrigation district shall assume all of the outstanding indebtedness of the former levee district, whether known or unknown, and also of the drainage district, contained in sections 12 and 13 of the said act, are not violative of the rule laid down in the case of *Reclamation District* v. *Birks, supra,* for the reason that the statute does not purport to render land within the irrigation district and not within either the former levee district or drainage district liable for the debts of said district. It merely provides that the irrigation district shall enforce the payment of the debts of those districts to the same extent and in the same way that payment would have been enforced had those districts continued to exist. Even if the act attempted to do more than this it would not be wholly unconstitutional but merely invalid as to those provisions which attempted to render property not within the former districts liable for the debts of those districts. (*Reclamation Dist.* v. *Birks, supra.*)

Appellant finds a further objection to the act in that part of section 16 which provides for a bond issue by the irrigation district for the purposes of repaying the principal and interest of the bonds of the levee district, the drainage district, or of the water company. It is argued that, since the

redemption of the outstanding bonds of the levee and drainage districts and the maintenance of levees and canals is a burden already imposed upon the properties within the levee district and drainage district, respectively, those obligations cannot be extended to include the additional property in the new district not within the limits of the levee district or the drainage district. The case of *Reclamation District v. Birks, supra,* is cited as authority for this proposition. It is unnecessary to determine in this case whether or not bonds issued under this provision of the act would be valid until the question arises in another form for the reason that the rights of the bondholders of the levee and drainage districts have been fully protected at the time of the formation of the irrigation district and, even if an attempt to redeem these bonds by an issue of bonds of the new irrigation district would be illegal, the illegality of that provision would not, under the case relied upon by appellant, render the entire act unconstitutional.

[17] Section 38 of the Irrigation District Act provides that certain proceedings may be "brought in the superior court in the county wherein the office of the board of trustees of the district is located, by any assessment payer of the district." Appellant points out that there is no provision of the act which requires the trustees to maintain an office in any particular place and contends that the effect of the foregoing section is to delegate to the board of trustees the power to change the venue of a civil action by changing the place where their office is located, thus violating article IV, section 25, subdivision 4, of the constitution of California. The foregoing provision of the statute must be read in connection with the case of *Gallup* v. *Sacramento etc. Drainage Dist.,* 171 Cal. 71 [151 Pac. 1142], which case had been decided prior to the adoption of the statute in question and must, therefore, be deemed to have been within the contemplation of the legislature at the time this statute was passed. That case holds that the *situs* of a district such as an irrigation district, for the purpose of venue, is determined by the place where its principal seat of government is located. It follows that, under that decision, the *situs* of the district is within the boundaries of that district and in that county where the principal business is transacted. This place cannot be determined until the board of trustees opens its

office and commences the transaction of business, and that is the only meaning to be accorded the provision of section 38 above quoted. Such a provision is not in contravention of the constitution.

[18] Section 3 of the act provides that the board of supervisors of Riverside County shall, not sooner than thirty days after the act takes effect, but within the sixty days from that date, give notice of an election to be held for the purpose of determining whether or not the district shall be organized. The section continues as follows: ''The notice calling the election above mentioned shall be given by said board of supervisors by causing a copy thereof to be posted in at least three public places within the district, at least twenty days prior to the date of the election, and also by publishing a copy of such notice by three weekly publications preceding the election, in some newspaper of general circulation published within the district.'' The act went into effect on the twentieth day of August, 1923, and the notice of election was posted for the first time on the fourth day of October. The election was held on October 27, 1923. It appears from the foregoing that the notice was given not sooner than thirty days and within sixty days after the act went into effect and, furthermore, that the notice was posted more than twenty days prior to the election. Appellant contends that the notice was invalid for the reason that it was not posted for a period of twenty days prior to the twentieth day of October, the day on which the sixty-day limitation expired. Appellant apparently is attempting to read into the act a requirement that, not only shall the notice be given within a period between thirty and sixty days after the date upon which the act went into effect, but that the notice shall be posted at least twenty days prior to the expiration of sixty days from the date the act went into effect. We find nothing in the provisions of the act warranting any such construction. The act provides that the notice must be published at least twenty days prior to the date of the *election* and there is no requirement that the election be held within sixty days from the date on which the act went into effect. The notice was published more than thirty days after the act went into effect, within sixty days from that date, and at least twenty days prior to the date of the election and

thereby all the requirements of the act with respect to the time of such notice were fully complied with.

[19] Finally, appellant complains because the act does not provide for a sinking fund for the repayment of the bonds of said district for the first twenty-one years after the organization of said district. There is no constitutional requirement concerning the establishment of a sinking fund for bonds of such a district. (*In re Madera Irr. Dist.*, 92 Cal., 296, 342 [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272].) Furthermore, article XI, section 13, of the California constitution confers upon the legislature a very broad power with respect to the supervision, regulation, and conduct of the affairs of districts of this character. The date for the establishment of a sinking fund was purely a matter within the discretion of the legislature.

We conclude, therefore, that the act in question conforms with constitutional requirements. The judgment is affirmed.

Waste, J., Shenk, J., Richards, J., Lawlor, J., Seawell, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.