THE PEOPLE *ex rel.* THE COUNTY OF CONTRA COSTA *v.* THE BOARD OF SUPERVISORS OF THE COUNTY OF ALAMEDA.

A COUNTY CAN BE RELATOR.—In an application for a writ of mandate to compel a Board of Supervisors to levy a tax, the county into whose Treasury the money intended to be raised by the tax will go can be the relator.

POWER OF LEGISLATURE OVER COUNTIES.—If an equitable claim exists in favor of one county against another arising out of the erection of a new county out

of territory taken in part from one already organized, the Legislature has the power to create by law a Board of Commissioners, to ascertain, settle, and report the amount due, and the further power, by the same law, to compel the Board of Supervisors of the county indebted to levy a special tax to pay the amount which the Commissioners report due.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The petition for the writ of mandate was verified by the District Attorney of Contra Costa County.

· The other facts are stated in the opinion of the Court.

*J. McM. Shafter,* and *W. W. Crane,* for Appellant.

The County of Contra Costa has no power to act as relator, for the county is not "a party beneficially interested." (Prac. Act, Sec. 468 ; 18 Bar. 635 ; 1 Kern, 392, 146.)

The Legislature has trespassed upon the judicial power.

Article III, Constitution, Sec. 1 : " The powers of the Government of the State of California shall be divided into three separate departments : the Legislative, the Executive, and Judicial ; and no person *charged* with the exercise of powers *properly* belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

The exceptions are as follows : 1—"Each House shall *judge* of the qualifications, elections, and returns of its own members," (p. 30, Sec. 8.)   2—" May compel the attendance of absent members under penalties," (p. 30, Sec. 9.)   3—" Assembly may impeach, and all impeachments shall be tried by the Senate," (p. 30, Sec. 18.)

Subject to the foregoing exceptions, neither the Legislature as a body, nor either of the two branches, nor any member of either branch, can do any act properly *belonging* to the judiciary, nor exercise any function appertaining thereto. (*Thompson* v. *Williams,* 6 Cal. 88.)

The general result is that the Legislature can deal with no description of judicial question, except as it may, within cer-

tain narrow limits, create municipal Courts for the purpose of trying them as a class.

The Legislature, in the Act of 1862, (p. 405,) has trespassed upon the judicial power in two particulars : 1—In taking from the judiciary the right to *try and determine a controversy* which the Act *creates or recognizes.*

This Act may be thus analyzed : 1. Law feature—creating the *right* of contribution; 2. Judicial feature—provision for trying and determining the amount equitably due; 3. Executive feature—levying the tax.

A judicial question is a question of disputed right between two parties who are competent to sue and be sued in the established tribunals with respect to it.    It matters not who the parties are, nor what was the *origin* of the right: *i. e.,* whether of common law or statute origin, as here.

*The question raised was a judicial one in its essential nature.* We have all the elements of a judicial controversy : *rights, duties, subject matter, parties, the relation of creditor and debtor.*

Could not the Courts have tried and determined the controversy, or the amount of the indebtedness, after the statute had impressed that character upon it?    Counties may sue counties under Act of 1854, (p. 45.)    But if the Courts *could* have tried, the Legislature *could not.    (Smith* v. *Judge Twelfth District,* 17 Cal. 559 ; *Gilmer* v. *Lime Point,* 17 Cal. 260.)

This will be made more apparent by ascertaining whether the ordinary ancillary judicial powers and processes could be used or resorted to by the Commissioner created by this Act.

*Mandamus.*—Could the Commissioners have issued *that* under legislative authority, if the *statute* had authorized it? Why not?    To try and determine a controversy is as clearly a judicial act as to issue a mandamus.

*People on the relation of O'Donnel* v. *Board of Supervisors of San Francisco,* 11 Cal. 211—constitutionality vindicated on the ground that O'Donnel's debt had passed into judgment.

The statute is unconstitutional, for the reason that there was a general law under which the statute right of Contra Costa *might* have been tried in the Courts; but by this excep-

tional statute that law has not been allowed its constitutional dues; that is, a uniform operation.

Again: Either party by the general law would have had the right of appeal. By this statute, this right is defeated of a uniform operation.

The Act of 1862 is an unconstitutional and oppressive edict, undertaking, as it does, to take the property of one class of citizens and give it to another. In this view, the counties, as such, do not figure, but the tax payers, in whom the real interest in the question all centers, reveal themselves. (18 Barb. 615.)

*Mark Shepard,* and *H. Mills,* for Respondents.

There are but two points made by the appellants:

First—"Are the People *ex rel.* the County of Contra Costa, beneficially interested in this case?"

We answer: This question cannot for the first time be raised in this Court, no issue thereon having been made by the pleadings. If it had been pleaded, it would have been equivalent to the plea of *"non fuit electus"* on a return to a mandamus to swear in a churchwarden, because the writ is directed only to ministerial officers to levy the tax; they are to do their duty, and no inconvenience can follow, for if the county be entitled to have the tax applied, it ought to be levied—if it ought not to be applied, the levy will do the County of Contra Costa no good. (See 3 Blk. Com. p. 266, marginal note 11, last part, to this effect: " Wherever the officer is but ministerial, he is to execute his part, let the consequence be what it may." Also Stra. 895.)

Second—The second proposition of the appellants, " That the Legislature hath trespassed upon the judicial power," is fully and entirely answered by Judge Denio, in the case of *The Town of Guilford* v. *The Supervisors of Chenango County,* 3d Kernan, (N. Y.) p. 148.

The point sought to be the most strongly and ingeniously urged by the appellants' counsel is in substance and to the

effect that the Legislature have created " a judicial problem ;" and, in analyzing the Act, they resolve the same into what they are pleased to call its several " features," as follows : 1st, " Law Feature ;" 2d, " Judicial Feature ;" 3d, " Executive Feature ;" then proceed to define a judicial question—and then say, " the question raised was a judicial one in its essential nature." What question is a judicial one ?

The fallacy of the argument on this point rests in the fact of assuming that the claim of Contra Costa County was a legal subsisting right in law or debt which was or not binding on Alameda County, the same as a claim or debt by one individual against another ; and that the Legislature undertook to legislate upon such supposed debt existing with such supposed rights ; whereas, in fact, the Legislature only undertook to say, by the Act, that since Contra Costa County has been compelled by us (see Laws 1860, pp. 94, 95,) to levy a tax to pay Gilman for a bridge that you, Alameda, got by our Act of 1853, we will compel Alameda County to levy a tax for the benefit of roads in Contra Costa County. In other words, Contra Costa built your bridge, and you shall repay by building roads in that county. And to ascertain the amount of tax to be levied, we direct that the sum shall be the proportionate of the cost of building the bridge that that portion of Alameda County taken from Contra Costa would have been compelled to pay to Gilman if it had remained a part of Contra Costa County.

This could easily be determined by a mathematical calculation, and was refered by the Act to Commissioners named therein ; and when this simple calculation had been made, the Board of Supervisors of Alameda was to levy the tax. We cannot see that in this the judicial field was greatly invaded, unless the solution of mathematical problems—and only simple ones, at that—is such invasion by the Legislature as to work it.

By the Court, SAWYER, J.

In 1852, one Gilman built a bridge for the County of Contra
Costa, upon a contract for about eight thousand dollars, to
bear interest at the rate of five per cent per month till paid.
The bridge was not completed till some time in 1853.   On
the 23d of March, 1853, the County of Alameda was created
by the Legislature out of territory taken from the Counties
of Contra Costa and Santa Clara, and the said bridge fell within
the new County of Alameda.   The contract for building the
bridge being with the County of Contra Costa, and the money
being unpaid, Gilman sued that county for the amount due,
and in 1856 recovered a judgment for upwards of twenty
thousand dollars, with accruing interest and costs.   In 1858,
the Legislature passed an Act appointing Commissioners to
adjust the amount to be paid by Alameda County to Contra
Costa County, as her share of the debt that had accrued while
a portion of Alameda County formed a part of the County of
Contra Costa, but the Commissioners in their award were lim-
ited by the Act to the indebtedness which had accrued prior
to the 23d of March, 1853, the date of the creation of the
new county.   At that date, no interest on the bridge contract
had accrued.   The Commissioners awarded against Alameda
County the sum of three thousand nine hundred and forty-four
dollars and sixty-six cents, but for reasons before stated, the
award did not include any interest on the bridge contract.
This award was afterwards in 1860 and 1861, paid to the
County of Contra Costa.   On the 14th of March, 1860, the
Legislature passed an Act empowering and requiring the Board
of Supervisors of Contra Costa County to levy a special tax
for the payment of the judgment, interests and costs recov-
ered by Gilman in 1856 on the bridge contract, which was
accordingly done and the judgment paid by the County of
Contra Costa.

In 1862, another Act was passed reciting in its preamble
the payment by Contra Costa County, in pursuance of said
Act of 1860, of the said Gilman judgment of "thirty-one

thousand dollars, some twenty-four thousand dollars of the
amount being for interest    *    *    *    on an obligation con-
tracted before the organization of Alameda County," etc., and
in the body of the Act appointing Commissioners "to ascer-
tain and award the amount of indebtedness, if any be found
equitably due from the County of Alameda to the County of
Contra Costa on account of obligations existing at the time of
the organization of the said County of Alameda." The Com-
missioners are required, if any award be found against the
County of Alameda, to certify the same to the Boards of Super-
visors of the respective counties, and thereupon the Board of
Supervisors of Alameda County are required, within a specified
time, to levy a tax for the purpose, and pay the amount so
awarded to the County of Contra Costa. Under this Act the
Commissioners awarded in favor of Contra Costa County
against the County of Alameda, the sum of eleven thousand
five hundred and seventy-four dollars and twelve cents, this
sum being for a portion of the said interest paid by the County
of Contra Costa on the said bridge contract, and the judgment
thereon, and for nothing else. The award having been certi-
fied to the Board of Supervisors of Alameda County, and a
demand that the tax for its payment be levied in pursuance
of the Act having been made, and the said Board having refused
to levy the same, an alternative mandamus was issued by the
District Court of the Fourth Judicial District against said
Board in this case, which was afterwards, by the judgment of
the Court made peremptory. From the judgment this appeal
is taken.

The appellants make two points—Firstly, the County of
Contra Costa has no power to act as relator, for the county is
not a party beneficially interested. Secondly, the Legislature
has trespassed upon the judicial power.

There is nothing in the first point. The judgment paid was
against the County of Contra Costa, and the money awarded
is to go into the Treasury of the county. It makes no differ-
ence that the law provides that "it shall be apportioned in
the Treasury of the County of Contra Costa," for certain speci-

fied purposes, viz: for the construction of certain roads, and to the " County School Fund." The county has charge of the funds, and is the trustee appointed by the law to apply it to the public uses specified; all of which are appropriate county charges. The county is, we think, " a party beneficially interested," within the meaning of the Practice Act.

It is objected that in appointing Commissioners to ascertain and award the amount to be paid by Alameda County to Contra Costa County, the Legislature conferred upon them judicial functions, and thereby usurped powers that, under the Constitution, belong exclusively to the judicial department of the Government. It will be observed that the money claimed was not a legal demand by one county against another, growing out of contracts or transactions between themselves, which could be litigated between them and enforced by suit in a Court of justice. The claim as between the counties arose solely out of legislative action in creating the new County of Alameda in part out of the County of Contra Costa, and wholly independent of the action of either county as between themselves. The Legislature is charged by the Constitution with the power and duty of establishing a system of county and town governments. (Article IX, Section 4.) It may divide counties and create new ones, or change the boundaries, as in its wisdom it may deem the public interest to require. And in creating new counties out of territory taken from counties already organized, it is but just that it should apportion the debts already accrued between the new and old counties in the ratio of the territory, population, taxable property and benefits conferred on the respective counties, or portions of counties affected by the change. It possesses the taxing power, and the power to determine for what objects of public interest, and to what extent the taxing power shall be exercised. As incident to these powers, it is authorized to apportion the taxes either upon the whole State, or upon particular districts according as the object is one of general or local interest or benefit. It may say what amount shall be paid by one district, and what amount by another.

In the case of *The Town of Guilford* v. *Supervisors of Chenango County*, 3 Ker. 149, the Court of Appeals of New York say: "The Legislature is not confined in its appropriation of the public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the State. It can thus recognize claims founded in equity and justice in the largest sense of these terms, or in gratitude or charity. Independently of express constitutional restrictions, it can make appropriations of money whenever the public well being requires, or will be promoted by it; and it is the judge of what is for the public good. It can, moreover, under the power to levy taxes, apportion the public burdens among all the tax paying citizens of the State, or among those of a particular section or political division."

This was in a case where certain parties had sued the Town of Guilford for expenses incurred and paid by them in conducting, by direction of the town, certain litigation on the part of the town, but in said suit failed to recover against the town the amount so expended, because the town was not legally liable. Subsequently the Legislature authorized the town, upon the vote of the majority of the inhabitants, to raise the sum expended and equitably due from the town, by tax, and to pay the demand; but directing that the decision of the people should be final. The inhabitants voted the proposition down. The Legislature then passed a law authorizing Commissioners to determine and award the amount expended by the parties in the litigation, and directing the Supervisors of the county to levy a tax upon the Town of Guilford and pay the amount so awarded. The town resisted the tax on the ground that it was unconstitutional, and among other points it was insisted that the Legislature had usurped judicial functions. But the law was upheld. The Court further say in the case, (p. 148): "The statute book is full, perhaps too full, of laws awarding damages and compensation of various kinds to be paid by the public to individuals who had failed to obtain what they considered equitably due to them by the decision of administrative officers acting under the provisions of

82

former laws.   The Courts have no power to supervise or review the doings of the Legislature in such cases."   (See also *Blanding* v. *Burr*, 13 Cal. 347.)

The Legislature, then, may, in its discretion, determine the objects for which, and the extent to which, the taxing power shall be exercised, and may apportion the taxes to be levied. In ascertaining the amount that ought equitably to be charged upon the different districts, as a guide to the exercise of this discretion, it may pursue its own methods, and employ its own instruments.

In this case the County of Contra Costa, in making a necessary public improvement—a bridge—incurred an obligation, which was chargeable upon the entire county.   After the obligation was incurred, but before the entire amount subsequently paid had become due, the county was divided and a large portion of the territory, population and taxable property liable for the demand was, by the Legislature, cut off from the County of Contra Costa, and erected into the new County of Alameda—the new county including the bridge, for the erection of which the obligation was incurred.   Equity, at least, required that the Legislature, in making the division of the territory, should then, or at some subsequent time, ascertain in some manner, the portion of the debt then accrued or to accrue on existing obligations, that should be equitably apportioned to each of the counties.   The Legislature chose to make the apportionment through Commissioners appointed by itself.   The amount chargeable upon the whole territory originally liable had, at the time of the passage of the law, been fixed by the judgment of a competent Court, and it was only necessary to make the apportionment.   There are two apportionments necessary, firstly, between the two counties, and secondly, each county is to apportion its share among the taxable inhabitants of the county.   The latter apportionment as much involves the exercise of judicial functions as the former. Both require an examination of facts, and the exercise of judgment.   Both depend upon the same principles, and stand upon the same footing.   But neither is in the nature of a suit liti-

gated between contending parties. The entire amount to be paid is fixed by judgment. The Legislature provides the mode and designates the officers who shall make both apportionments; and we think the power is peculiarly within the province of the legislative department of the Government. It makes no difference whether each county is directed to levy its proportion of the debt and pay it directly to Gilman, or whether the whole is first raised by the County of Contra Costa and paid to Gilman, and then the County of Alameda raises its portion and pays it to the County of Contra Costa. We think, therefore, the apportionment of the amount to be paid by the respective counties was not an encroachment upon the powers with which the judicial department is charged within the meaning of the Constitution. It is a power that has usually been exercised in other States, as well as heretofore in this State, by the political, and seldom, if ever, by the judicial department of the Government.

The judgment is affirmed.

Mr. Justice SHAFTER, having been of counsel in the case, did not participate in the decision.