[S. F. No. 11864. In Bank.—April 22, 1926.]

PALO VERDE IRRIGATION DISTRICT (a Public Corporation), Petitioner, v. TONY SEELEY, as Secretary, etc., Respondent.

[1] IRRIGATION DISTRICTS—PALO VERDE IRRIGATION DISTRICT—REDEMPTION OF BONDS OF LEVEE AND DRAINAGE DISTRICT—POWER OF IRRIGATION DISTRICT TO ISSUE BONDS FOR.—The board of trustees of the Palo Verde Irrigation District, which was organized for the purpose of taking over the properties and functions of the Palo Verde Joint Levee District, Palo Verde Drainage District, and the Palo Verde Mutual Water Company, has power to issue bonds of the district for the purpose of providing funds to pay or redeem bonds of said levee district and said drainage district and thus impose an obligation by taxation on property owners whose properties are located outside of the boundaries of said levee and drainage districts, although said bonded indebtedness was not originally a lien or a charge upon their property.

[2] Id. — Public Improvements — Charge on Property Benefited — Power of Legislature.—The legislature has power to make property actually benefited liable for the cost of public improvements and chargeable with the payment of a reasonable proportion thereof based upon benefits or other equitable considerations.

[3] Id. — Benefits of Land — Finding by Legislature. — Where the legislature has found that lands and improvements within an irrigation district will be uniformly benefited by levee protection works theretofore constructed, there is no constitutional inhibition against the issuance of refunding bonds whereby the whole irrigation district assumes the burden originally imposed upon the property within the levee district.

[4] Id.—Due Process of Law.—It cannot be said that the declaration by the legislature of a benefit to all the lands of an irrigation district and the imposition of an assessment upon them for the payment thereof is a taking of property without due process of law.

[5] Id.—Assessment—Right to Hearing.—The general rule is that a hearing as to benefits must be provided at some time before land is finally burdened by an assessment; but this general rule is subject to the exception that when the legislature itself, by fixing the boundaries of a district, finds that all of the property therein is benefited, the property owners are not entitled to a hearing, for they are conclusively presumed to have been heard through their representatives in the legislature, whose action is conclusive and not subject to review by the courts unless shown to be unjust and absurd.

[6] Id. — Fixing of Boundaries — Finding of Benefits. — The mere fact that the finding of a benefit to lands in an irrigation district by improvements therein was made after the boundaries of the district were fixed does not militate against the validity of such a finding by the legislature.

[7] Id.—Boundaries of Levee District—Fixing by Supervisors— Determination of Land Benefited.—The action of a board of supervisors in fixing the boundaries of a levee district does not prevent the legislature from finding that lands other than those included in the levee district were benefited by the improvements therein.

[8] Id. — Refunding Bonds — Payment of Portion of Old Levee Bonds.—The fact that refunding bonds which are to be a charge upon an entire irrigation district are to be sold to pay only a portion of outstanding bonds of a levee district the lands of which are included in the irrigation district, while principal and interest

5. See 26 Cal. Jur. 357.

of the remaining bonds of the levee district continue to be a charge only upon the property originally liable therefor, is not anomalous.

[9] ID.—IMPROVEMENTS IN LEVEE DISTRICT—GENERAL TAX.—The two methods of raising revenues, to wit: By assessments based upon special benefits and a general tax not referable to special benefits, are entirely distinct, and property owners obligated under the imposition of the general tax are not in a position to claim that other lands benefited by the improvements are not assessed.

[10] ID.—REDEMPTION OF BONDS—METHOD OF RAISING FUNDS—POWER. OF LEGISLATURE.—It is optional with the legislature to provide for the redemption of bonds of a levee district through assessments based upon benefits or provide for their payment through the exercise of its general taxing power.

[11] ID.—LIABILITY OF OWNERS OUTSIDE LEVEE DISTRICT.—Property owners in the Palo Verde Irrigation District within the area not originally included in the Palo Verde Joint Levee District, by electing to become a part of the Palo Verde Irrigation District, consented to become subject to the obligations authorized to be imposed by the provisions of the Irrigation District Act for the issuance of refunding bonds.

[12] ID.—OBLIGATION OF BONDHOLDERS OF LEVEE DISTRICT.—The obligation of the contract entered into by the taxpayers of the Palo Verde Joint Levee District at the time of the issuance of the Levee District bonds will not be impaired by the issuance of refunding bonds by the Palo Verde Irrigation District for the purpose of paying the former bonds, by reason of the fact that the personal property within the levee district will be released from the obligation to pay taxes for the repayment of the levee district bonds.

[13] ID. — RIGHTS OF BONDHOLDERS. — The rights of holders of bonds issued by the Palo Verde Joint Levee District are not in any way impaired by the issuance of refunding bonds by the Palo Verde Irrigation District for the payment of the former bonds.

---

(1) 40 Cyc., p. 822, n. 34 New.  (2) 40 Cyc., p. 824, n. 51.  (3) 40 Cyc., p. 825, n. 59 New.  (4) 40 Cyc., p. 825, n. 59 New.  (5) 12 C. J., p. 887, n. 38, p. 1263, n. 9, 27 New; 40 Cyc., p. 825, n. 59 New.  (6) 40 Cyc., p. 825, n. 59 New.  (7) 40 Cyc., p. 825, n. 59 New.  (8) 40 Cyc., p. 825, n. 59 New.  (9) 40 Cyc., p. 825, n. 59 New.  (10) 40 Cyc., p. 825, n. 59 New.  (11) 40 Cyc., p. 825, n. 59 New.  (12) 40 Cyc., p. 825, n. 59 New.  (13) 40 Cyc., p. 822, n. 34 New.

9. See 24 Cal. Jur. 38.

APPLICATION for a Writ of Mandate to compel the secretary of the Palo Verde Irrigation District to sign refunding bonds. Writ granted.

The facts are stated in the opinion of the court.

Chapman & Chapman for Petitioner.

O'Melveny, Millikin, Tuller & Macneil and Paul E. Schwab for Respondent.

LENNON, J.—Mandate to compel the respondent, as secretary of the board of trustees of Palo Verde Irrigation District, to sign $213,000 of refunding bonds, designated as "Second Issue" of said Palo Verde Irrigation District, which were voted upon at an election held in said irrigation district on August 28, 1925.

The Palo Verde Irrigation District was organized in 1923 under an act known as "Palo Verde Irrigation District Act" (Stats. 1923, p. 1067), for the purpose of taking over the properties and functions of three separate and independent agencies theretofore operating in the Palo Verde Valley and thereby eliminating the inefficiencies and extra expenses occasioned by the independent functioning of said agencies. These independent agencies consisted of the Palo Verde Joint Levee District, which had charge and control of levee protection for the valley; the Palo Verde Drainage District, which had charge of the drainage projects in the valley, and the Palo Verde Mutual Water Company, a private corporation, which had control of the distribution of water.

The boundaries of the Palo Verde Irrgiation District comprise all of the territory within the old Palo Verde Joint Levee District of Riverside and Imperial counties and all of the territory within the Palo Verde Drainage District. Said levee district and drainage district, however, partially overlap each other and there is an area containing some 684 acres within the old drainage district which is not within the boundaries of the old levee district and some 13,817 acres in the old levee district which are not within the drainage district.

The validity of the Irrigation District Act as a whole, and the organization of the Palo Verde Irrigation District there-

under, was considered and upheld by this court in the case of *Barber* v. *Galloway,* 195 Cal. 1 [231 Pac. 34].

The statute under which the Palo Verde Irrigation District was organized was amended in 1925 (Stats. 1925, p. 637) by adding section 15a, which deals specifically with the power of the irrigation district to issue refunding bonds to take care of the bonds already issued or to be issued by the Palo Verde Joint Levee District, the Palo Verde Drainage District and the Palo Verde Mutual Water System. In said section it is specifically declared that "all of the levee and other protection works or structures and all other drainage canals and other drainage works, and all of the irrigation system of the Palo Verde Mutual Water Company which have *heretofore* been constructed by either and all of said organizations [Palo Verde Joint Levee District, Palo Verde Drainage District and Palo Verde Mutual Water Company], or which may hereafter be constructed, maintained and operated by the Palo Verde Irrigation District, are uniformly advantageous and beneficial to all of the lands within said district [Palo Verde Irrigation District]." (Italics added.)

In the case of *Barber* v. *Galloway, supra,* the question of whether or not the issuance of bonds by the irrigation district to redeem the bonds of the levee or drainage district would be illegal was expressly left open as being unnecessary to a decision of that case.

Since the date of that decision the proceedings for the authorization, issuance and sale of said $213,000 of refunding bonds have been taken and respondent, being one of the officers required under the statute and under the resolution authorizing the issuance of these bonds to sign the same, has refused to do so upon the ground that such bonds would, if issued, be invalid. It is the respondent's contention that the provisions relating to the issuance of these refunding bonds, and the provisions regarding the levying of assessments for the payment thereof, are unconstitutional, and that the issuance of these bonds with the subsequent levying of assessments for their payment in accordance with the statutory provisions will result in the taking of property without due process of law and will result in the unconstitutional impairment of the obligations of a contract.

It is conceded that the statutory requirements regulating the proceedings for the authorization, issuance and sale of

198 Cal.—31

the bonds have been complied with and, therefore, no ques-
tion of the regularity of said proceedings is here involved.

The said $213,000 of refunding bonds are to be issued
"for the purpose of providing funds to be applied upon the
payment or redemption of bonds now outstanding of the
Palo Verde Joint Levee District of Riverside and Imperial
Counties, California, the Palo Verde Drainage District or
the Palo Verde Mutual Water Company, the payment of
which has been assumed by this district [Palo Verde Irri-
gation District] and which may become due and payable
during the next three years." It appears that none of the
Palo Verde Drainage District bonds will mature within the
next three years, but that $123,000 of bonds of the Palo
Verde Joint Levee District will mature within three years
from August, 1925, and that $90,000 of bonds of the Palo
Verde Mutual Water Company will mature within three
years from said date. Manifestly, therefore, the proceeds
from the $213,000 of refunding bonds are to be used for
the purpose of paying or redeeming the $123,000 of Joint
Levee District bonds and $90,000 of the Palo Verde Mutual
Water Company's bonds.

The bonds of the old levee district which are to be re-
deemed or paid off were payable from taxes upon all the tax-
able real and personal property in the levee district.
(Stats. 1911, p. 303, as amended by Stats. 1917, p. 809.)
Under the provisions of the Palo Verde Irrigation District
Act, sections 15a, 24, 28, and 59, all of the lands and im-
provements thereon within the irrigation district will be
assessed for the payment of the refunding bonds. The re-
sult will, therefore, necessarily be that a portion of the
burden of the old joint levee district will be imposed upon
the 684 acres of the new irrigation district which were not
at any time a part of the old joint levee district which
originally incurred the obligation.

[1] Respondent insists that the board of trustees of the
Palo Verde Irrigation District has not the power to au-
thorize and issue bonds of the district for the purpose of
providing funds to pay or redeem bonds of the former levee
district and drainage district, and thus impose an obliga-
tion by taxation upon property owners whose properties are
located outside of the boundaries of the former districts
for the purpose of payment of a bonded indebtedness which
was not originally a lien or a charge upon their property.

[2] With this contention we cannot agree. In *Johnson* v. *City of San Diego,* 109 Cal. 468 [30 L. R. A. 178, 42 Pac. 249], and *People* v. *Alameda County,* 26 Cal. 641, the court upheld the power of the legislature to make property actually benefited liable for the cost of public improvements and chargeable with the payment of a reasonable proportion thereof based upon benefits or other equitable considerations.

If the lands within the irrigation district which were not included in the original levee district are and will be actually benefited by the levee protection work already constructed by the levee district, no good reason exists why they should not be called upon to pay their proportional share of the cost of construction.

[3] That the lands and improvements within the irrigation district will be uniformly benefited by the levee protection works heretofore constructed has been expressly found by the legislature. In the face of this express finding by the legislature we find no constitutional inhibition against the issuance of refunding bonds whereby the whole irrigation district assumes the burden originally imposed upon the property within the levee district.

It is well settled in this state that the legislature has plenary power over districts organized for reclamation purposes. (*Barber* v. *Galloway, supra.*) By article XI, section 13, of the constitution the legislature is granted unlimited power "to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts, organized or existing under any law of this state."

[4] It cannot be said that the declaration by the legislature of a benefit to all the lands of the irrigation district and the imposition of an assessment upon all the lands for the payment thereof is a taking of property without due process of law. [5] The general rule on this subject is that a hearing as to benefits must be provided at some time before the land is finally burdened by the assessment. But this general rule is subject to the well-established exception that when the legislature itself, by fixing the boundaries of a district, finds that all of the property therein is benefited, the property owners are not entitled to a hearing, for they are conclusively presumed to have been heard through their

representatives in the legislature. (*Tarpey* v. *McClure,* 190 Cal. 593, 604 [213 Pac. 983].) Such a finding by the legislature, in the absence of a showing that the action of the legislature was palpably unjust and absurd, is conclusive and is not subject to review by the courts. (*People* v. *Sacramento Drainage Dist.,* 155 Cal. 373, 386 [103 Pac. 207].)

[6] The mere fact that the finding of a benefit was made after the boundaries of the irrigation district were fixed does not, in our opinion, militate against the validity of such a finding by the legislature. If the legislature may make an implied finding that certain lands are or will be benefited by certain improvements within that district, it would seem to lie within its power to make express findings that certain lands already included in a district will be benefited by improvements within that district.

[7] No attempt is made by the respondent to establish the fact that the action of the legislature in declaring the lands of the irrigation district benefited by the levee protection improvements was arbitrary and unjust by denying any of the facts set forth by petitioner to justify the findings of the legislature. Respondent contents himself with declaring that inasmuch as the board of supervisors, to whom was given the power of determining the boundaries of the old levee district, must have determined, in fixing the said boundaries, that the lands therein included and no others were benefited by the proposed levee protection works, such determination was conclusive of the fact that only the lands within the levee district would be benefited by such works and any subsequent action of the legislature finding that other lands not included within the old levee district were benefited must necessarily be unreasonable, unwarranted, and arbitrary. This does not necessarily follow. It may well happen that by the extension of the original plans lands which would not be benefited by the original construction work would derive a benefit not only from the additional improvement but from the original improvement as well. The determination of the board of supervisors is not, therefore, a conclusive determination and is not uncontrovertible proof that the action of the legislature in declaring other lands benefited was unwarranted.

[8] There is nothing anomalous in the fact that the refunding bonds which are to be a charge upon the entire irrigation district are to be sold to pay only a portion of

the outstanding levee bonds, namely, those maturing in the next three years, while principal and interest of the remaining bonds continue to be a .charge only upon the property originally liable therefor. The legislature has seen fit, in the exercise of its plenary power, to allow that obligation to remain against the property originally liable therefor unless refunding bonds may hereafter be issued to take them up. No injustice is done the owners of the properties within the old levee district, because they are only required to do what they were originally bound to do. The fact that the legislature has seen fit to partially lighten the burden of the original obligation of the property owners of the old levee district does not make it obligatory upon the legislature to permanently lessen it.

Respondent argues that the legislature, having authorized the issuance of refunding bonds which are a charge upon all the lands uniformly benefited, to retire a part of the levee district bonds, it will be necessary for the legislature to impose an obligation upon all of the lands benefited to pay off the remaining levee district bonds. [9] However, the obligation imposed upon the old levee district properties was not an assessment based upon special benefits, but was a general tax, not referable to special benefits. The two methods of raising revenues are entirely distinct, and, therefore, the property owners obligated under the imposition of a general tax will not be in a position to complain that other lands benefited by the improvements are not assessed. (*Southern Pacific Co.* v. *Levee District No.* 1, 172 Cal. 345 [156 Pac. 502].)

[10] It was optional with the legislature to provide for the redemption of the bonds through assessments based upon benefits, or provide for their payment through the exercise of its general taxing power. Since it was optional with the legislature to cause these bonds to be discharged through the imposition of a general tax without regard to benefits, it may at its option continue that method of raising the funds for the payment of the remaining bonds of the levee district.

[11] It may also be said, we think, that the property owners within the area not originally included in the levee district, by electing to become a part of the irrigation district, consented to become subjected to the obligations authorized to be imposed by the provisions of the Irrigation

District Act for the issuance of the refunding bonds. Under the Irrigation District Act the board of trustees had the power to issue refunding bonds to take up outstanding levee district bonds as well as the bonds of the drainage district and water company. (Sections 57, 58, and 59, Stats. 1923, p. 1067.) The question of whether the new district should be organized was submitted to a vote of the property owners of the district and carried. Moreover, it will be remembered that the proposal to issue the bonds was carried by an overwhelming vote at the special election called for that purpose. It may be that the owners of property in the added territory voted in the negative, but their properties formed a component part of the new district, and the voice of the majority under the provisions of the statute under which they had elected to become a part of the new district was binding upon them.

Respondent insists, however, that the facts and decision in the instant case are practically identical with the facts and decision in the case of *Reclamation District No. 70* v. *Birks,* 159 Cal. 233 [113 Pac. 170], and that the instant case is therefore covered and controlled by the latter case. Respondent relies particularly upon certain language to be found in the Birks case which reads as follows: " . . . where a debt has been imposed upon the property of a *quasi*-municipal corporation such as a reclamation district, which debt is to be paid by the owners of the property within the district in proportion to the benefits which their lands receive from the work done, it is not within the power of the legislature to transfer and impose this debt upon property not within the district at the time the original obligation was created, and which was not benefited by the work done.''

The Birks case is not, however, closely analogous in its facts and circumstances to the instant case, and that decision does not, therefore, govern and control the instant case. The facts in that case show that there had been in existence a district known as "Swamp Land District No. 70.'' This district had issued warrants to the extent of many thousand dollars. In 1905 the legislature created Reclamation District No. 70, which reclamation district embraced all of the territory within the old Swamp Land District No. 70 and certain additional territory in another district. The trustees of Reclamation District No. 70, upon the fallacious assumption

that title to the improvements of old 70 remained in old 70 after its absorption by new 70, adopted a plan whereby the property of old 70 was to be purchased by new 70 and paid for by assessments levied upon lands in the new 70. There was no legislative finding that the lands of the new district were benefited by the improvements undertaken by the old 70 and no provision was made by the legislature for the payment of the existing debt of the old district by the new district. The assessments levied for the payment of the properties of the old district were evidently levied upon the theory that the debts of the old district became automatically the debts of the new district and the new district was liable for such debts *by operation of law.* The court in its decision pointed out that beneficial title to the property of the old district was in the state, and upon the creation of the new district the title became vested in the new district; the new district could not buy what it already owned and an assessment for the payment of the *purchase* of the property was therefore invalid. It was further held that in the absence of any provision by the legislature for the payment of the existing debt it remained the debt of the old district and did not become the obligation of the new district *by operation of law.* It was said that the debt of the old district did not become an obligation of the new district by operation of law for the reason that it might happen that the lands of the new district would not be benefited by the reclamation works of the old district and it would be manifestly unjust for the burden to be automatically imposed by operation of law regardless of whether there was or was not any benefit. The question of what the situation would be had there been, as in the instant case, a legislative finding that the lands of the new district were benefited by the improvements of the old district was not discussed and obviously could not have been decided for the reason that that question was not then before the court.

Even the language relied upon by respondent as specifically denying the power of the legislature to impose the burden upon the land in the new irrigation district not originally within the levee district, is not inconsistent with the theory that such a burden may be imposed if the new lands are found to be benefited by the improvements of the old levee district. The language relied upon is merely to

the effect that it is not within the power of the legislature to impose the debt upon property not within the district at the time the original obligation was created which was "not benefited by the work done."

In the instant case there is an express enactment by the legislature to the effect that all the lands within the irrigation district will be benefited by the improvements of the old drainage district, the old levee district and the Palo Verde Mutual Water System. In the Birks case there was no such enactment. In the instant case express provision is made for the assumption of the debt of the old levee district by the new irrigation district by means of the issuance of refunding bonds. In the Birks case no such provision had been made. Therein lies the distinction and differentiation between the Birks case and the present case.

We have heretofore discussed only the question of the validity of the refunding bonds to redeem the bonds of the old levee district. The same arguments, however, apply with equal force to the bonds proposed to be issued to redeem the bonds of the Palo Verde Mutual Water Company. Section 15a of the Statute of 1925 (Stats. 1925, p. 637) contains an express finding that all of the lands of the irrigation district will be benefited by the irrigation system of the Palo Verde Mutual Water Company. Inasmuch as the petition for the mandate avers that within the next three years vast extensions and improvements are contemplated to be made so that thousands of acres of land not now under the water system, can be supplied with water and placed in cultivation, it cannot be said as a matter of law that the finding of the legislature that all of the lands within the irrigation district, including both the lands now served by irrigation and those to be served, are benefited, by the water distribution system already constructed, is palpably unreasonable and unwarranted.

[12] It is also seriously urged by the respondent that the obligation of the contract entered into by the taxpayers of the Palo Verde Joint Levee District at the time of the issuance of the levee district bonds will be impaired by the issuance of the refunding bonds by reason of the fact that the personal property within the levee district will be released from the obligation to pay taxes for the repayment of the levee district bonds. There is no impairment of the

obligation so far as the taxpayers are concerned by the change in the method of taxation. In the case of *La Mesa, Lemon Grove etc. Irr. Dist.* v. *Halley,* 197 Cal. 50 [239 Pac. 719], it was held that the legislature had the power to authorize changes in the method of raising revenue by such district and expressly repudiated the idea that property owners had any contractual right to have the same method continued in force without alteration.

[13] It is, of course, obvious that the rights of the bondholders are not in any way impaired by the issuance of the refunding bonds. If the bonds are issued and sold and the proceeds applied to the payment of the old bonds as they mature, the obligation of the old bonds is satisfied and there is no contract to impair. If the obligation of the old bonds is not extinguished by their payment from the proceeds of the refunding bonds, then the obligation of the old bonds remains and all the property originally liable therefor continues to be liable therefor. Nowhere in the original act, nor in the amendatory act of 1925, is there any attempt on the part of the legislature to release any property from existing obligation to bondholders.

Let the writ issue, directed to Tony Seeley as secretary of the board of trustees of Palo Verde Irrigation District, commanding him to sign the $213,000 of refunding bonds designated as "Second Issue" of the Palo Verde Irrigation District, voted upon at the election held in said district on August 28, 1925.

Richards, J., Seawell, J., Curtis, J., Shenk, J., Lawlor, J., and Waste, C. J., concurred.