[S. F. No. 15990. In Bank.—June 9, 1938.]

THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Petitioners, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT et al., Respondents.

Ray L. Chesebro, *in pro. per.,* and as City Attorney, William H. Neal, Assistant City Attorney, and Bourke Jones, Deputy City Attorney, for Petitioners.

Everett W. Mattoon, County Counsel, J. H. O'Connor, County Counsel, and H. W. Kennedy and W. B. McKesson, Deputies County Counsel, for Respondents.

U. T. Clotfelter and F. Ray Bennett, as *Amici Curiae,* on Behalf of Respondents.

SHENK, J.—This proceeding in *mandamus* presents the question of the constitutionality of section 13½ of the Los Angeles County Flood Control District Act added to the statute in 1937 (Stats. 1937, p. 1763). The original statute is found in the statutes of 1915 at page 1502.

The petitioners allege their ownership of lands situated and assessable within the Los Angeles County Flood Control District but outside the confines of certain named drainage districts within the flood control district. The petition shows that in December, 1937, the board of supervisors of Los Angeles County, acting as the board of supervisors of the flood control district, by resolution, accepted a transfer to the flood control district of the storm drain improvements, drainage improvements and drainage systems of drainage districts numbers 1 and 3, organized under the statute of 1903 (Stats. 1903, p. 354), and of drainage districts numbers 8, 9, 11, 17, 22, 23, 25, 26 and 29, organized under the Drainage District Improvement Act of 1919 (Stats. 1919 p. 731), and amendatory acts. All of said drainage districts and drainage district improvements are located within the territory comprising the Los Angeles County Flood Control District. In the course of the proceedings accepting the transfer the board did not expressly make a finding of the necessity or usefulness of such property for any of the purposes of the flood control district, nor was any hearing ordered or had on the question of such usefulness or necessity. The terms of the conveyance and acceptance provided for the transfer to the flood control district of funds on hand in the several drainage districts and for the assumption by the flood control district of the obligation to pay the principal and interest remaining unpaid on all outstanding bonds, issued by such districts to cover the cost of the improvements conveyed, maturing subsequent to the date of the conveyance or transfer. The petition discloses an intent on the part of the board of supervisors to proceed pursuant to the power vested in it by said section 13½.

It is alleged that the bond redemption and interest requirements of drainage districts 8, 9, 11, 17, 22, 23, 25, 26 and 29 aggregate $4,234,001.25; but what proportion, if at all, of this amount represents obligations maturing subsequent to the date of transfer is not indicated. It is stated that the board of supervisors intends to levy annual special assessments upon all the real property within the flood control district sufficient

to meet the outstanding obligations incurred for the drainage improvements accepted by the board. It is alleged and claimed by the petitioners that such special levy on lands within the flood control district but outside of the drainage districts whose obligations would be affected thereby is illegal and void because, so it is urged, it would be a special assessment levied against property without regard to the accrual of benefits to the lands assessed, and therefore would be a denial of due process and the equal protection of the laws enjoined by the state and federal Constitutions. The petitioners seek to employ the remedy here invoked to restrain the assessment contemplated by the board on lands outside the drainage districts. The alternative writ issued.

Questions of law only are involved. They are presented by a demurrer interposed on behalf of the respondents.

By section 13 of article XI of the state Constitution the legislature is given power ''to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts or drainage districts organized or existing under any law of this state''. (Amendment adopted Nov. 3, 1914.)

The objects and purposes of the Los Angeles County Flood Control District Act were stated in section 2 to be: ''to provide for the control of the flood and storm waters of said district, and to conserve such waters for beneficial and useful purposes by spreading, storing, retaining or causing to percolate into the soil within said district, or to save or conserve in any manner, all or any of such waters, and to protect from damage from such flood or storm waters the harbors, waterways, public highways and property in said district''. By section 16 the board of supervisors was given the power to do all work and to construct and acquire all improvements necessary or useful for carrying out any of the purposes of the act; also to acquire either within or without the boundaries of the district, by purchase, condemnation, donation or by other lawful means, from private persons, corporations, reclamation districts, swamp land districts, levee districts, protection districts, drainage districts, irrigation districts, or other public corporations, or agencies, or districts, all lands, right of way, easements, property or materials necessary or useful for carrying out any of the purposes of the act, and to compensate any private owner or reclamation or other district or agency for

property taken over or acquired by the flood control district as part of its work of control or conservation or protection.

Section 13½ added by Statutes of 1937 provides that the board of supervisors of the Los Angeles County Flood Control District, by a four-fifths vote may accept a transfer and conveyance of all, but not less than all, storm drain improvements, drainage improvements or drainage systems lying within the territorial limits of the flood control district and within certain described classes, including those constructed prior to January 1, 1937, pursuant to provisions of the 1903 and 1919 acts hereinabove mentioned. Said section 13½ also contained the following provisions: "Upon the transfer or conveyance to said flood control district of any such storm drain improvements, drainage improvements or drainage systems, to pay the cost and expense of the construction of which bonds of any drainage improvement district have been issued, said flood control district shall thereupon be and become liable for the payment of the principal upon the bonds of such drainage improvement district maturing subsequent to the date of such conveyance and upon the indebtedness of such drainage improvement district represented by interest coupons maturing subsequent to such date of transfer. The board of supervisors of the flood control district shall levy a special tax each year upon the taxable real property in said flood control district sufficient to pay the principal and interest on the bonds of said drainage districts as such principal and interest become due subsequent to the date of such conveyance and transfer. Such tax shall be levied and collected on said real property at the time and in the same manner as the general tax levy for county purposes, and when collected shall be paid into the county treasury of said county of Los Angeles to the credit of said district fund and shall be used for the payment of the principal and interest on said drainage district bonds and for no other purpose."

It will be noted that neither section 16 nor section 13½ provides for a hearing prior to acquisition of any of the property described therein, and that section 16 alone expressly restricts the acquisition of property to that which is necessary or useful for the purposes of the district. It will also be noted, however, that section 16 does not refer to specific property, such as is described in section 13½. In other words, section 16 provides generally for the acquisition of such prop-

erty as, in the opinion of the board of supervisors, may be necessary or useful to carry out the purposes of the flood control act. Section 13½, on the other hand, refers to the acceptance of a limited class of described property, namely, the specified storm drain improvements, drainage improvements, and drainage systems, which from the nature of such property indicates without any express declaration its relative usefulness for the purposes of the flood control district.

The petitioners contend that inasmuch as the legislature in enacting section 13½ did not expressly find that drainage improvements constructed within the Los Angeles County Flood Control District are beneficial or useful to the lands in the district, and did not provide the means for a hearing and a finding in that respect by a designated body, an assessment levied on lands within the flood control district and outside the drainage districts to meet any part of the cost of such improvements constitutes a deprivation of due process of law. The contention, however, is necessarily grounded on the hypothesis that the drainage improvements are not *per se* useful for the purposes of the flood control district and therefore not beneficial to all the lands within that district, and that the absence of any legislative declaration of such benefit, or any provision for a hearing on the question of benefit to the lands affected, is fatal to the validity of the section.

To support their theory the petitioners argue that when the drainage districts were formed, especially the districts organized subsequent to the creation of the flood control district, they presumably included all of the territory which would be benefited by the respective drainage improvements, and that the omission from the districts of any surrounding area conclusively indicates that such area would not be benefited thereby. ▮ The petitioners rely generally on cases which hold that only the lands benefited may be assessed to pay the cost of such special improvements (*Spring St. Co.* v. *City of Los Angeles,* 170 Cal. 24 [148 Pac. 217, L. R. A. 1918E, 197] ; *Atchison, T. and S. F. Railway Co.* v. *Reclamation Dist. No. 404,* 173 Cal. 91 [159 Pac. 430] ), and on cases holding that to permit assessments for special improvements without a legislative declaration of benefit to the lands assessed or a provision for a hearing and finding by a properly constituted body, is to deprive the owner of due process in violation of the state and federal Constitutions. (*Fallbrook Irr. Dist.*

v. *Bradley,* 164 U. S. 112 [17 Sup. Ct. 56, 41 L. Ed. 369];
*Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254 [208 Pac.
304].)

■ Nevertheless the petitioners correctly concede that if
the legislature itself has found, either by designating the ter-
ritory to comprise the district or by expressly so declaring,
that the lands included or affected are benefited, such a find-
ing presupposes appropriate and adequate inquiry and is con-
clusive upon the property owners in the district and upon the
courts (*Fallbrook Irr. Dist.* v. *Bradley, supra; People* v. *Sac-
ramento Drainage Dist.,* 155 Cal. 373, 386 [103 Pac. 207];
*Brookes* v. *City of Oakland,* 160 Cal. 423 [117 Pac. 433];
*Miller & Lux* v. *Board of Supervisors, supra*); and in such
case it is not essential that the benefits be realized in fact, if
otherwise there is any reasonable foundation for the finding
of potential benefit. (*Board of Directors of Crawford
County Levee Dist.* v. *Dunbar,* 107 Ark. 285 [155 S. W. 96].)

■ The petitioners point to the inclusion in section 16 of
language specifying that lands or improvements within or
without the district to be acquired pursuant to the authority
of that section, must be such as will be necessary or useful for
carrying out the purposes of the act, and to the absence of
any such qualifying language in section 13½, as indicative
of the invalidity of the latter section. The petitioners, how-
ever, have not fully appreciated the necessity for the inclu-
sion of such qualifying language in section 16 and the reason
for its omission from section 13½. As noted, section 16 con-
fers the general power upon the board of supervisors to ac-
quire such lands or works, wherever they may be situate, as
may be necessary or useful for the purposes of the act. In
contrast to that, by section 13½ the legislature itself has
specified particular property which may be acquired by the
flood control district. Flood control necessarily covers a
much larger field and a broader program than one restricted
merely to drainage of a specified area. It conceivably in-
cludes works or improvements which may be far removed
from the lands which will be protected and benefited thereby.
It is therefore within the legislative discretion to conclude
that a system of drainage improvements, although initially
employed to the direct beneficial use of a restricted area for
drainage purposes, may be employed in conjunction with
flood control facilities for the benefit of a much larger area.

By designating in section 13½ the particular property which may be acquired by the flood control district it must be presumed that the legislature concluded that the entire flood control district would be so benefited by the use of the designated drainage improvements in the larger and broader program of the flood control act. ■ The petitioners do not question the propriety of a legislative finding that the designated improvements would be so beneficial. They complain of the absence of an express declaration in that regard. But from the import of section 13½ the legislature must be deemed to have exercised its plenary power to make such a finding. That section is not construed as granting a general power to the board of supervisors to acquire properties for the use of the district. It is rather a special declaration that it may acquire on behalf of the flood control district certain designated properties, namely, drainage works and improvements and systems constructed prior to January 1, 1937, by certain classes of drainage districts within the flood control district. This particularity of description of the improvements and property authorized to be accepted by the district presupposes a prior inquiry and investigation on the part of the legislature and a finding by it that such designated improvements will be useful for the purposes of the district and beneficial to the territory comprising the flood control district. ■ It is obvious therefore that sections 16 and 13½ have no necessary relation to each other. Nor is section 13½ inconsistent with section 4 of the act, which requires the board of supervisors to employ engineers to formulate the best plan for carrying out the purposes of the act. In the matter of the acquisition of the property described in section 13½ the legislature has itself decided the usefulness of the property to the purposes of the flood control district. ■ Section 13½, together with the enactment of a general statute on the same subject (Stats. 1937, p. 1761), evidences the adoption by the legislature of a comprehensive program of drainage and flood control in the various counties to be carried out by flood control districts, rather than divided among counties, drainage districts and flood control districts.

The Constitution and the decisions do not preclude the carrying out of that program by the enactment of the legislation referred to. ■ As pointed out in *Hadley* v. *Dague,* 130 Cal. 207, 220 [62 Pac. 500], the mode in which the ex-

pense is to be borne as well as the district which is to bear the expense and the manner of distributing the expense are legislative questions. It was there held that although the theory upon which the expense is charged to the land in the district is that the property has received a particular benefit, nevertheless the validity of the assessment does not depend upon the ability to show that the property received a benefit commensurate with the amount of the assessment, that is, that the benefit is identical with the burden. And quoting from *Fallbrook Irrigation District* v. *Bradley, supra,* the court recognized that although the method of arriving at the amount of the burden may in some instances result in inequalities, that circumstance was "far from arising to the level of a constitutional problem and far from the case of taking property without due process of law". The Hadley case referred to the case of *Lent* v. *Tillson,* 72 Cal. 428 [14 Pac. 71], and the statement therein that the benefits need not be immediate, but that the only just limitation, if any existed, with respect to assessing for such benefits, was that "a tax will not be upheld when the courts can plainly see that the legislature has not really exercised its judgment at all, or that manifestly and certainly no such benefit can or could reasonably have been expected to result. The judge should not place his mere opinion against that of the legislature".

The following language from the case of *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119, 124, 125 [169 Pac. 1028], might well be held applicable in disposing of the petitioners' contention herein: "The mere passage of the act, then, must be taken to import a finding by the legislature that the proposed work will answer a public purpose and that its execution will benefit the land within the district to such an extent as to warrant the imposition upon such land of the cost in the manner provided. The findings thus implied are as fully effective as if declared in express terms in the act itself. (*San Christina Inv. Co.* v. *San Francisco,* 167 Cal. 762, 769 [141 Pac. 384, 52 L. R. A. (N. S.) 676].) The fixing of the district which is to bear the expense of a local improvement and the mode in which such expense is to be borne and distributed are primarily legislative questions." ▇ It has long been settled that adjustments in such matters which are within the legislative discretion may be made subsequent to the organization of such corporate

bodies and districts. (*Johnson* v. *City of San Diego*, 109 Cal. 468 [42 Pac. 249, 30 L. R. A. 178]; *Palo Verde Irr. Dist.* v. *Seeley*, 198 Cal. 477 [245 Pac. 1092].)

The legislature has been invested with an enlarged discretion by section 13 of article XI of the Constitution. Cogent reasons must therefore appear in support of objections urged against particular statutory provisions relating to the conduct of such districts enacted subsequent to the adoption of the constitutional amendment before the court would be justified in declaring them invalid. (*Wores* v. *Imperial Irr. Dist.*, 193 Cal. 609, 622 [227 Pac. 181].)

Our conclusions herein are not opposed to the holding in the case of *Reclamation Dist.* v. *Birks*, 159 Cal. 233 [113 Pac. 170], relied upon by the petitioners. The present case does not involve a "sale" of improvements from one district to another as was contemplated by the action of the trustees of the reclamation district in the cited case. It was held in the Birks case that one district may not acquire property of another and impose upon the property owners payment of the debts of the one from which the property has been acquired unless the land so to burdened will derive a commensurate benefit therefrom. The result in that case has been obviated here by the action of the legislature declaring in effect that the lands so to be burdened have been or will be benefited by the transfer of the specified property. The same distinction supported the validity of an act which authorized the transfer of properties from a smaller to a larger district in the case of *Barber* v. *Galloway*, 195 Cal. 1 [231 Pac. 34]. The case of *City of Redwood City* v. *Myers*, 7 Cal. (2d) 283 [60 Pac. (2d) 291, 108 A. L. R. 727], does not support the petitioners' position. That case involved the validity of the Municipal Investment Bond Act (Stats. 1915, p. 109), which purported to permit the municipality to levy an assessment for the purpose of issuing bonds the proceeds of which were to be used for purchasing and retiring improvement bonds of the city or its improvement districts. In line with the case of *Reclamation Dist.* v. *Birks, supra,* it was held that the legislature was without the power to authorize the imposition of a tax upon all the lands in the municipality for the purpose of retiring a bond issue, the proceeds of which were to be used for purchase of such bonds; that the permanent purchase of bonds merely to effect their retirement and as a relief measure

was not a beneficial use of the proceeds of the bond issue within the holding of the Birks case.

Our conclusion herein that the statute involved is valid also finds support in *Palo Verde Irr. Dist.* v. *Seeley, supra.* In that case the writ of mandate directed the respondent to sign refunding bonds pursuant to the Palo Verde Irrigation District Act (Stats. 1923, p. 1067). That act provided for the organization of the Palo Verde Irrigation District which comprised and joined the territory and functions of three former independent agencies, a levee district, a drainage district, and a mutual water company. The legislature expressly declared that all of the improvements of each former district were uniformly advantageous and beneficial to all the lands of the new district. The refunding bonds were issued pursuant to an amendment of 1925 (Stats. 1925, p. 637), for the purpose of redeeming the bonds of all three districts. The power of the legislature to authorize the imposition of the obligation upon the larger district to pay for improvements constructed within the smaller districts was upheld. The respondents there contended that in fixing the boundaries of the smaller district it must have been determined that the lands included therein only and no others were benefited by the works there constructed. But the contention was considered unavailing. The court said: "It may well happen that by the extension of the original plans lands which would not be benefited by the original construction work would derive a benefit not only from the additional improvement but from the original improvement as well." It is true that in that case the legislative declaration of benefit was express, but it is seen that the same effect should obtain where, as here, from the nature of the enactment, the implication that the legislature so found is unmistakable and unavoidable.

The statement in the case of *Van De Water* v. *Pridham,* 33 Cal. App. 252, 261 [164 Pac. 1136], that there is a radical difference between the purposes of the Drainage Act and the Flood Control Act, the purpose of the former being to dispose of the water as an injurious element and of the latter to conserve it as a beneficial agent, is not necessarily inconsistent with the conclusions herein expressed. It is not difficult to perceive that the object to be attained by the legislation here questioned, namely, the combination of the functions of drainage and flood control to the end that drainage

waters may as well be conserved through the joint facilities of the drainage and flood control districts, is well within the legislative power.

The peremptory writ is denied and the alternative writ is discharged.

Langdon, J., Curtis, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.